**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RUBEN NUNGARAY,
*Defendant-Appellant.*

No. 11-30341

D.C. No.
1:11-cr-00067-
BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
August 28, 2012—Seattle, Washington

Filed October 5, 2012

Before: Mary M. Schroeder and Ronald M. Gould,
Circuit Judges, and Paul L. Friedman,
Senior District Judge.*

Opinion by Judge Gould

*The Honorable Paul L. Friedman, Senior District Judge for the U.S.
District Court for the District of Columbia, sitting by designation.

12155

## COUNSEL

Dennis M. Charney (argued), Charney and Associates, PLLC, Eagle, Idaho, for the defendant-appellant.

Wendy J. Olson, United States Attorney District of Idaho, and Ann T. Wick (argued), Special Assistant United States Attorney, United States Attorney's Office, Boise, Idaho, for the plaintiff-appellee.

## OPINION

GOULD, Circuit Judge:

Appellant Ruben Nungaray challenges the district court's decision to increase his sentence by two levels under U.S.S.G. § 2K2.1(b)(1)(A). We consider whether the district court erred by enhancing Nungaray's sentence based on its finding that he constructively possessed four firearms. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

On July 20, 2011, Nungaray pled guilty to one count of unlawful possession of a firearm in violation of 18 U.S.C.

§ 922(g)(1). Although he pled guilty to only one count of unlawful firearm possession, at the sentencing hearing, the district court found by a preponderance of the evidence that Nungaray constructively possessed four other guns that he sold to an undercover officer. As a result, the court enhanced Nungaray's sentence by two levels under U.S.S.G. § 2K2.1(b)(1)(A) for a total offense calculation of 23 with a criminal history score of VI, making the guideline sentencing range 92 to 115 months. The district court sentenced Nungaray to 92 months.

Nungaray sold firearms to undercover officer, Sergeant Martin Flores, in Boise, Idaho, on January 5, 2010. On January 4, 2010, a confidential informant told the FBI that Nungaray wanted to sell several guns. Later that day, Nungaray called the informant and offered to sell five firearms for $1,200: a .38 caliber revolver, a .380 caliber pistol, a Derringer, and two shotguns. On January 5, 2010, Nungaray sent a text message to the informant with pictures of four firearms: a .38 caliber revolver, a .357 caliber revolver, a Derringer, and a .380 caliber pistol. The informant then introduced Sergeant Flores and Nungaray through a three-way phone call. The three then negotiated a price of $900 for the four guns.

At the sentencing hearing, Sergeant Flores testified that he and Nungaray originally agreed to meet at Cabela's in Boise, but Nungaray later changed the location to a particular Jack-in-the-Box fast-food restaurant in Boise. When Nungaray arrived, he left his car and got into the passenger's seat of Sergeant Flores's car. Nungaray first asked Sergeant Flores to follow him to his home to get the guns, but Sergeant Flores refused. After this conversation, Nungaray took a brief phone call on his cell-phone, directed Sergeant Flores to pop the trunk, and then made another phone call with his cell-phone and spoke in Spanish. Shortly after this call, a woman approached the car, placed a bag containing the four guns in the trunk, and left. Nungaray told Sergeant Flores that he could inspect the guns in the trunk while Nungaray remained

in the passenger seat. Sergeant Flores did so, and after looking in the trunk he returned to the car and paid Nungaray the agreed compensation for the guns. Nungaray then said he would contact Sergeant Flores for another deal.

Nungaray, at the sentencing hearing, testified that he sold the guns on behalf of his elderly, disabled friend Corrie who needed money. Per Nungaray's story, he was just a go-between who never took possession of the guns. According to Nungaray, Corrie took the pictures of the guns and sent them to Nungaray who forwarded them to the informant. At Nungaray's request, Corrie asked her friend Crystal to take the guns from Oregon to Boise and to meet Nungaray at the Jack-in-the-Box where Nungaray told her to put the guns in Sergeant Flores's trunk. Nungaray admitted that he negotiated the sale price and intended to make another sale to Sergeant Flores,[1] but said that he gave the full payment to Corrie the day after the sale and kept none of the money for himself. He testified that he never touched the guns and wanted to keep them out of his possession because of his previous felony conviction.

At the sentencing hearing, Nungaray's counsel argued that Nungaray's actions were akin to that of a stock broker and he lacked the dominion and control necessary for constructive possession. The district court rejected this argument. After reviewing Ninth Circuit precedent, the Federal Jury Practice and Instructions definition of constructive possession,[2] and the

---

[1]Nungaray's underlying felony possession of a firearm offense is related to the January 5th gun sale. Law enforcement discovered the gun, a Ruger rifle, during a residence check of Nungaray's home. Nungaray testified that he asked Corrie to send this gun at the same time as the other guns and that one of Corrie's friends placed it in his garage. Nungaray planned to sell this gun to Sergeant Flores at a later date.

[2]"A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a

evidence presented at the hearing, the district court found that the facts demonstrated a nexus sufficient to establish that Nungaray had dominion and control over the guns. Specifically, the court reasoned that "where an individual negotiates the sale of the item, sends pictures of it to another individual, arranges for the sale, is present at the sale, directs another person to physically pick up the firearms and deliver them physically into the trunk of the purchaser, that . . . constitutes constructive possession."

## II

Nungaray argues that the preponderance of the evidence does not support the district court's finding that he constructively possessed the guns sold to Officer Flores and that the two-level sentence enhancement was improper. He contends that he merely brokered the gun sale and lacked the knowledge, power, and intent to exercise control over the guns as required for constructive possession. We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines to the facts for abuse of discretion. *See United States v. Goodbear*, 676 F.3d 904, 909 (9th Cir. 2012). For the reasons stated below, we conclude that the district court did not err in finding constructive possession by a preponderance of the evidence when Nungaray initiated contact with the buyer, negotiated the gun price, minutely directed the gun delivery and sale location, was present at the sale, and took payment from the buyer after he inspected the delivered guns. The district court did not abuse its discretion by imposing the two-level enhancement for gun possession.

given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." 2A Kevin F. O'Malley, et al., Fed. Jury Prac. & Instr. § 39:12 (6th ed. 2012). At the sentencing hearing, the district judge incorrectly referred to these instructions as the Ninth Circuit Model Instructions.

**[1]** Constructive possession requires the government to show "a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the firearms." *United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011) (quoting *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001)). "Dominion and control" exist if a person has knowledge of the firearms and "the power and intent to exercise control over them." *Vasquez*, 654 F.3d at 885. The government may demonstrate knowledge and intent through circumstantial evidence. *Id.* Mere proximity to contraband and mere association with a person controlling the contraband are each insufficient to show constructive possession. *See United States v. Terry*, 911 F.2d 272, 279 (9th Cir. 1990).

**[2]** Sufficient evidence exists to prove by a preponderance that Nungaray constructively possessed the guns. He was no mere bystander. He controlled the sale of the guns from start to finish. He demonstrated his knowledge of the guns and his power and intent to control them by contacting the informant, sending pictures of the guns, setting the delivery location, asking Sergeant Flores to come to his home to get the guns, allowing Sergeant Flores to check the guns in the trunk, and taking payment. Furthermore, according to Nungaray, he directed Corrie[3] to send the guns to Boise and told her agent, Crystal, to place them in the trunk. Even accepting Nungaray's testimony that he acted at Corrie's direction, "[h]e was no mere intermediary or innocent person at the scene of illicit activity but rather an active participant, if not the principal, in the sale and delivery." *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir. 1970) (evidence sufficient for constructive possession when defendant provided a sample of contraband whiskey, arranged for its delivery, and kept a tally as it was unloaded). In a real and pragmatic sense, there was

---

[3]It is possible that Corrie is Nungaray's imaginary friend or that Nungaray otherwise distorted the facts in his story, but we conclude, even crediting his testimony, that he constructively possessed the guns.

evidence of Nungaray's control of the guns for purposes of the sale.

Despite this evidence, Nungaray contends that he lacked the power to control the firearms because he was a casual facilitator of the sale and could not assure delivery without difficulty. He bases this argument on a loose interpretation of *United States v. Barnett*, 468 F.2d 1153 (9th Cir. 1972) and Seventh Circuit case law. We reject this argument.

**[3]** Under *Barnett*, Nungaray argues that he did not have dominion and control over the guns because he lacked a "working relationship with th[e] principal that enable[d] an assurance of delivery." *Barnett*, 468 F.2d at 1154, (quoting *Hill v. United States*, 379 F.2d 811, 814 (9th Cir. 1967)). Stated another way, he contends that he could not control whether Corrie would send him the guns. Yet, Nungaray could and did assure delivery of the guns to Sergeant Flores before Flores tendered the payment for the guns. Neither the minor changes in the type and quantity of the guns nor Nungaray's reliance on Corrie and Crystal to deliver the guns negate Nungaray's ability to make good on his promise to sell. *See Brothers v. United States*, 328 F.2d 151, 155 (9th Cir. 1964) (constructive possession established regardless of who placed the drugs at the delivery location); *see also White v. United States*, 315 F.2d 113, 114 n.1, 115 (9th Cir. 1963) (per curiam) (evidence sufficient to find constructive possession when narcotics delivered after failed attempt).

Nungaray also contends that we should apply the reasoning of *United States v. Manzella*, 791 F.2d 1263 (7th Cir. 1986), and hold that Nungaray merely brokered the sale. *Manzella*, as a decision of the Seventh Circuit, is not binding upon us and we would consider following it only if persuaded that it is correct. But more importantly, here *Manzella* can be readily distinguished on its facts, so we need not decide if we would hold likewise on similar facts, that is if we would follow *Manzella* in a case with materially indistinguishable facts.

In *Manzella*, Judge Posner's opinion for the Seventh Circuit held that the evidence was sufficient to support a conspiracy conviction relating to cocaine distribution but was too weak to establish constructive possession of the cocaine with intent to distribute it. Manzella had made two failed attempts to connect the cocaine supplier with the seller and buyer and was not present during the third attempt when the drugs finally arrived. *Manzella*, 791 F.2d at 1265. The court in *Manzella* analogized his conspiratorial role as similar to a real-estate broker's part in lining up a real-estate sale. *Id.* at 1265-66. But the opinion emphasized the weakness of the evidence against Manzella on the issue of constructive possession. *Id.* at 1266. The court acknowledged that constructive possession doctrine was aimed at creating "a legal fiction to take care of such cases as that of a drug dealer who operates through hirelings who have physical possession of the drugs," and noted it would be odd if a dealer could avoid being guilty of possession merely because he could "hire a flunky to have custody of the drugs." *Id.* But the essential thing was that the dealer have "ultimate control over the drugs." *Id.*

*Manzella* can be distinguished on both the weight of the evidence and the evidentiary standard applied. In the case of Manzella, he had difficulty in arranging the drug delivery. *Id.* at 1266-67. By contrast here, the government presented ample evidence of Nungaray's control over the sale and his ability to assure delivery of the guns without difficulty. Even Judge Posner's opinion acknowledged that one "who can *assure* the delivery of a good controls it." *Id.* at 1267 (distinguishing *Manzella* from cases where constructive possession was based on assurance of delivery and association with the actual possessor). Moreover, *Manzella* applied the higher beyond a reasonable doubt standard to its review of the evidence sustaining Manzella's conviction, *see id.* at 1264-65 (reviewing jury conviction for sufficiency of the evidence), but at Nungaray's sentencing, the district court properly applied the lower preponderance of the evidence standard. *See United States v. Mejia-Luna*, 562 F.3d 1215, 1221 (9th Cir. 2009). As

previously discussed, the evidence presented at the sentencing hearing shows by a clear preponderance that Nungaray exerted control and dominion over the guns sufficient to establish constructive possession.

Nungaray's other two arguments are also unavailing. First, he argues that his avoidance of direct contact with the guns demonstrates a lack of intent to control them. This argument confuses actual and constructive possession. Constructive possession requires only that the government show intent to control, not intent to actually possess. *See Vasquez*, 654 F.3d at 885, 886. Second, Nungaray complains that the district court's decision improperly relied on "formulaic" reasoning and analogy instead of relevant facts. But the district court reviewed the case law, described its reasoning, and highlighted the facts relevant to its decision. Nothing in the record suggests that the district court did not consider the specific facts of this case.

**[4]** In sum, Nungaray's theory that he never possessed the guns that he sold and delivered to Sergeant Flores is too clever by half. It strains common sense to say that while Nungaray orchestrated the details of the gun sale, negotiating on number of guns and consideration to be paid for them, directing where the guns were to be delivered, directing that the guns be placed in the trunk of the buyer's car, permitting the buyer to look at them, and, when he was satisfied, collecting the money that had been negotiated and agreed upon as consideration for the guns, he never had possession of the guns. Contrary to Nungaray's strained argument, the preponderance of the evidence shows that he indirectly controlled the delivery and placement of the guns in the hands of the buyer. We hold that the district court did not err in enhancing Nungaray's sentence based on its finding that he constructively possessed four firearms.

   **AFFIRMED.**