# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-51093

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VICTOR LOUIS HAGMAN, III,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Victor Hagman, III ("Hagman") challenges his sentence on the grounds that the district court erroneously calculated his base offense level. Hagman pleaded guilty to a two-count indictment that charged him with being a felon in possession of one firearm and with possessing and bartering one stolen firearm. At sentencing, the district court applied a four-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(1)(B), noting that relevant conduct dictated that Hagman bartered between eight and twenty-four firearms. We conclude that this enhancement was applied erroneously. Accordingly, we VACATE Hagman's sentence and REMAND for resentencing.

No. 12-51093

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Hagman, a convicted felon, was an employee of Unkle Dick's Gunsmith Services ("Unkle Dick's") which was owned by Richard Stallcup ("Stallcup"). Hagman alleges that sometime in April 2012, he borrowed a Titan FIE pistol from Unkle Dick's to loan to a friend who needed protection from an abusive ex-boyfriend.  After being out of town and away from his store for a few days, Stallcup returned on April 15, 2012, and discovered what he described as "forced entry" into the backdoor of Unkle Dick's.  Initially, Stallcup did not notice any missing merchandise.  Several days later he realized that a total of twelve firearms were unaccounted for.  Stallcup reported the burglary to the police and mentioned that he suspected that his employee, Hagman, played a role in the taking of the firearms.  After Stallcup told Hagman that Unkle Dick's had been burglarized, Hagman returned the Titan FIE pistol and claimed to have borrowed it prior to the burglary.

Hagman told Stallcup that he made some inquiries "in the streets" and had information about who had the missing firearms. Hagman warned Stallcup that if the police were to become involved, the firearms would likely never be recovered.  Hagman explained that he could help retrieve the missing merchandise but the people who allegedly had the firearms required that Stallcup pay $150 for each of them.  Stallcup instructed Hagman to do whatever it took to get the firearms back.  Hagman attempted to arrange a transaction between Stallcup and a man who had possession of *some* of the firearms but was ultimately unable to procure any of them.

In May 2012, a federal grand jury indicted Hagman for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and possessing and bartering a stolen firearm in violation of 18 U.S.C. § 922(j).  Count one of the indictment states in relevant part that Hagman:

2

who having been convicted of a crime punishable by imprisonment for a term exceeding one year . . . did knowingly possess in and affecting commerce a firearm, to wit: a Titan FIE pistol, which had been shipped and transported in interstate and foreign commerce. All in violation of Title 18, United States Code, Section 922(g)(1).

Count two of the indictment states in relevant part that Hagman:

knowingly posses[ed] and barter[ed] in and affecting commerce a firearm, to wit: a Titan FIE pistol, which had been shipped and transported in interstate and foreign commerce, knowing and having reasonable cause to believe it was stolen. All in violation of Title 18, United States Code, Section 922(j).

In addition to the indictment, the government filed a factual basis for Hagman's plea that was signed by Hagman, Hagman's attorney, and the prosecutor. The factual basis for the plea indicated that Hagman took the Titan FIE from Unkle Dick's without permission; the Titan FIE was shipped or transported in foreign commerce; and that Hagman was a convicted felon. The factual basis did not include any information about the burglary, other firearms that were missing from Unkle Dick's, or any other details related to Hagman's efforts to retrieve the missing firearms for his boss, Stallcup. Nevertheless, the United States Probation Office's Presentence Report ("PSR") recommended that four levels be added to Hagman's base offense level because his offenses involved more than eight but less than twenty-four firearms. *See* U.S.S.G. § 2K2.1(b)(1)(B).

At sentencing, the government argued that Hagman should be accountable for twelve firearms, because it "is just entirely too coincidental" that eleven firearms were missing from Unkle Dick's at the same time Hagman took the Titan FIE pistol. Therefore, according to the government, there was proof by a preponderance of evidence that Hagman was involved in the taking of all twelve firearms. In the same breath, however, the government stated that whether Hagman was involved in the burglary is "murky." The

government admitted that it did not know "whether Mr. Hagman was in on the burglary, was just associating with the burglars, or was the burglar himself. There's no way of knowing." But, "it's too coincidental for all of this to happen at the same time . . . ."

The district court did not state whether it believed there was proof by a preponderance of the evidence that Hagman was involved in the theft of the eleven missing firearms. Nonetheless, noting that Hagman pleaded guilty to violating § 922(j), which makes it an offense to receive, possess, conceal, store, *barter*, sell, or dispose of any stolen firearm, the district court found that Hagman's offer to recover the eleven missing firearms for a price constituted "bartering for the[] stolen weapons." Accordingly, the district court found that the four-level sentencing enhancement was appropriate.

Hagman argues on appeal that the district court committed clear error by finding that his offenses involved eight to twenty-four firearms. Hagman claims that there was no evidence to prove that he actually or constructively possessed the eleven firearms that were allegedly stolen and never recovered from Unkle Dick's. Furthermore, Hagman argues that the district court mischaracterized the testimony of FBI Task Force Officer Randy Vest ("Officer Vest") by concluding that Hagman "was bartering for the return of stolen weapons."

On appeal, the government essentially makes three arguments as to why the sentencing enhancement was properly applied in this case. First, the government argues that Hagman had actual possession of the missing firearms because the proximity in time with respect to his taking the Titan FIE and the alleged theft of eleven other firearms is "too coincidental." Secondly, the government argues that Hagman had constructive possession of the missing firearms because he placed himself in the middle of negotiations between Stallcup and the alleged burglars. Therefore, according to the government, he

had access to and control over the firearms.  Finally, the government argues that Hagman unlawfully sought to obtain the firearms by making efforts to retrieve them from the alleged burglars.

## II.     STANDARD OF REVIEW

"[We] review[] de novo the district court's guidelines interpretations and review[] for clear error the district court's findings of fact." *United States v. Le*, 512 F.3d 128, 134 (5th Cir. 2007).  The determination of relevant conduct is a factual finding reviewed for clear error.  *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009).  "Under the clearly erroneous standard, we will uphold a finding so long as it is plausible in light of the record as a whole." *Id.*  (citation and internal quotation marks omitted).  "However, a finding will be deemed clearly erroneous if, based on the record as a whole, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).  "The government must prove sentencing enhancements by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010).

## III.    DISCUSSION

### A.

U.S.S.G. § 2K2.1(b)(1) is a numerical scheme that adjusts a defendant's offense level based upon the number of firearms associated with his crimes of conviction; i.e., the higher the quantity of firearms, the greater the offense level.  The commentary to this section states that "[f]or purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S.S.G. § 2K2.1(b)(1) cmt. n.5.[1]  Here, the government does not

---

[1] "We regard Guidelines commentary that interprets or explains a guideline as authoritative unless it violates the Constitution or a statute or is inconsistent with, or a

allege that Hagman unlawfully distributed any firearms. Therefore, our review is limited to the question of whether the government proved by a preponderance of evidence that Hagman possessed or sought to obtain eight to twenty-four firearms.

We begin our analysis with the issue of possession. Possession of a firearm may be actual or constructive. *United States v. Patterson*, 431 F.3d 832, 837 (5th Cir. 2005). To prove that Hagman had actual possession of the eleven missing firearms, the government must demonstrate that he exercised direct physical control over them. *See United States v. Jones*, 484 F.3d 783, 787 (5th Cir. 2007). To prove that Hagman had constructive possession of the eleven missing firearms, the government must show that he exercised dominion or control over the firearms or the area in which they were discovered. *Id.*

In this case, we look to two sources of information in the record to aid in our determination as to the *number* of firearms Hagman actually or constructively possessed: 1) the charging documents; and 2) Officer Vest's testimony regarding what Stallcup told him about the number of firearms that were missing from his inventory. The charging documents only reference one firearm; the Titan FIE. This fact is significant because it demonstrates that the sentencing enhancement was not based upon facts that were alleged and accepted as part of Hagman's guilty plea. Instead, the four-level enhancement is based upon relevant conduct alleged by the government through the testimony of its lone sentencing witness, Officer Vest.

**1.  Actual Possession**

---

plainly erroneous reading of, that guideline." *United States v. Mohr*, 554 F.3d 604, 607 n.1 (5th Cir. 2009) (citation omitted).

Officer Vest testified that Stallcup, upon discovering that someone had forced his or her way into Stallcup's place of business, did not initially notice that twelve firearms were missing from the store. Several days passed before Stallcup completed his inventory assessment and realized that twelve firearms were missing. There is no information before us that proves by a preponderance of evidence that some of the firearms were not missing at a time prior to the alleged burglary. Moreover, there is no evidence proving that certain firearms were not taken during the span of time between Stallcup's discovery of the forced entry and the completion of his inventory assessment. This is not to say that Stallcup's business was not burglarized or that he did not experience the loss of some quantity of firearms as a result. Nevertheless, the government never recovered any of the missing firearms and no evidence was presented with respect to what happened to them after they were allegedly taken from Unkle Dick's. Therefore, Stallcup's inventory assessment is the only information available to this court for the purpose of determining the *number* of firearms associated with Hagman's offenses.

In many of the cases where the government successfully proved actual possession of a firearm, the evidence showed that the defendant was found with the firearm on his person; eyewitnesses testified to seeing the defendant carrying the firearm; the defendant's DNA or fingerprints were found on the firearm; or the defendant admitted to having possession of the firearm.[2] In

---

[2] *See, e.g.*, *United States v. Arteaga*, 436 F. App'x 343, 348–49 (5th Cir. 2011) (per curiam) (unpublished) (the government proved actual possession of a firearm where defendant confessed to physically taking possession of a revolver and that confession was corroborated by independent evidence to establish its trustworthiness); *United States v. Jackson*, 389 F. App'x 357, 359 (5th Cir. 2010) (per curiam) (unpublished) (affirming the district court's finding that actual possession was proven where the evidence showed that the defendant "was carrying a gun as he ran away from police officers; that he threw it under a bush; that officers recovered the gun from under the bush; and that his DNA was on the gun and the clip."); *United States v. Cantu*, 340 F. App'x 186, 189 (5th Cir. 2009) (per curiam) (unpublished) (recognizing proof of actual possession where there was unrebutted testimony

this case, the eleven missing firearms were not found on Hagman's person or in his residence; no witnesses testified that they saw Hagman carrying the missing firearms; no forensic evidence links Hagman to the missing firearms; and Hagman did not confess to having possession of them.  There is no evidence, direct or circumstantial, that Hagman exercised physical control over these firearms.  Therefore, we conclude that the government did not prove by a preponderance of evidence that Hagman had actual possession of the eleven missing firearms.

## 2.  Constructive Possession

In the alternative, the government argues that Hagman had constructive possession of the missing firearms because "he placed himself in the middle of negotiations" for their return.  This, according to the government, "necessarily impl[ied] that [Hagman] knew who had the weapons and that he had access to them at some point in time." We disagree.  Constructive possession of a firearm can be proven by showing that the defendant had ownership, dominion, or control over the firearm or the premises in which it was concealed or recovered.  *United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004).  Most often, the issue of constructive possession is raised before this court where a defendant is found to be in the vicinity of a firearm but not in actual possession of it; a firearm is found in his residence; or a firearm is found in some other place over which the defendant has dominion or control.[3]

that defendant was seen carrying objects to the exact place where firearms were recovered); *United States v. Hernandez*, 146 F.3d 30, 32–33 (1st Cir. 1998) (upholding felon in possession of a firearm conviction where no firearm was recovered but eyewitness testified that defendant was armed during a carjacking).

[3] *See, e.g.*, *United States v. Clark*, 226 F. App'x 407, 408 (5th Cir. 2007) (per curiam) (unpublished) (holding that evidence was sufficient to show constructive possession where, *inter alia*, the weapon was "discovered in a bag on the passenger floorboard of [the defendant's] vehicle" and officers "saw him place in the bag a shiny object that appeared to be a gun"); *United States v. Millikin*, 136 F.3d 136, *1 (5th Cir. 1998) (per curiam) (unpublished) (affirming a district court's finding constructive possession where the

No. 12-51093

The government's novel constructive possession argument in this case is unavailing. First, we do not believe that the government proved by a preponderance of evidence that Hagman had access to the missing firearms. Second, even if Hagman had access to the firearms, the government provided no evidence that he exercised dominion or control over them.[4] There is no evidence that any transaction took place between Hagman, the burglars, and Stallcup. The record does not show that Hagman received any money from Stallcup and there is no proof that he controlled the movement of the eleven missing firearms. Hagman never showed Stallcup any photographs of the missing firearms and never produced a single weapon for purchase despite the fact that Stallcup was willing to pay $150 for each firearm. Therefore, we

---

government offered evidence that defendant "had knowledge of the weapons in his house, and at least one of the firearms was found next to his bed"); *United States v. Smith*, 591 F.2d 1105, 1107 (5th Cir. 1979) (holding that a defendant's "dominion and control over his own residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession").

[4] The facts of *United States v. Nungaray*, 697 F.3d 1114, 1115–16 (9th Cir. 2012) and *United States v. Hood*, 507 F. App'x 859, 861 (11th Cir. 2013) (per curiam) (unpublished), provide examples of the type of conduct that demonstrates dominion and control under similar factual scenarios. In *Nungaray*, the Ninth Circuit held that constructive possession was proven by a preponderance of evidence where the defendant argued that he merely "brokered the gun sale and lacked the knowledge, power, and intent to exercise control over the guns as required for constructive possession." *Nungaray*, 697 F.3d at 1116. The Ninth Circuit explained that the defendant "demonstrated his knowledge of the guns and his power and intent to control them by contacting the informant, sending pictures of the guns, setting the delivery location, asking Sergeant Flores to come to his home to get the guns, allowing Sergeant Flores to check the guns in the trunk, and taking payment." *Id.* at 1117.

In *Hood*, the defendant, "a convicted felon, facilitated the sale of a total of eleven firearms to a confidential source ("CS") and an undercover detective ("UC")." *Hood*, 507 F. App'x at 861. During the transactions, "the CS and the UC met with [the defendant] and another person. While the other person handed the firearm to the UC and the CS, [the defendant] accepted the payment from the CS and the UC." *Id.* The defendant argued that he was merely present at the firearms transactions and did not possess any of the firearms. *Id.* The court held that the defendant "arranged all the firearms transactions and accepted the money for the firearms, which is sufficient to show constructive possession." *Id.*

9

conclude that the government did not prove by a preponderance of evidence that Hagman had constructive possession of the eleven missing firearms.

### 3. Bartering/Unlawfully Sought to Obtain

The district court's application of the enhancement relied, in large part, upon the language of § 922(j) that proscribes the act of bartering with stolen firearms. Although "bartering" is a means of violating § 922(j), it is not listed in the guidelines as a method of calculating the number of firearms involved in an offense for the purposes of § 2K2.1(b). The district court's finding that Hagman "barter[ed] for the return of the stolen weapons" is based upon an erroneous interpretation of § 922(j). "Barter," as defined by Black's Law Dictionary 171 (9th ed. 2009), is "the exchange of one commodity for another without the use of money." *See, e.g.*, *Smith v. United States*, 508 U.S. 223, 229 (1993) ("By attempting to trade his MAC-10 for the drugs, he used or employed it as an item of *barter* to obtain cocaine; he derived service from it because it was going to bring him the very drugs he sought." (internal quotation marks omitted) (emphasis added)); *United States v. Dyer*, 589 F.3d 520, 526–27 (1st Cir. 2009) (differentiating between selling commodities "for money" and "exchanging commodities by barter") (citation omitted); *United States v. Birk*, 453 F.3d 893, 899–900 (7th Cir. 2006) (bartering involved the defendant's expectation to obtain two handguns in exchange for facilitating the sale of a shotgun). Hagman's alleged attempt to exchange money for the eleven missing firearms does not constitute bartering for the purposes of § 922(j). Therefore, the district court's application of the four-level enhancement was based upon flawed reasoning and cannot be affirmed on those grounds.

We assume that the spirit of the district court's finding that Hagman engaged in bartering is analogous to the government's argument on appeal that Hagman "unlawfully sought to obtain" the eleven missing firearms. At sentencing, Officer Vest testified that upon Hagman's return to work at Unkle

No. 12-51093

Dick's, Hagman told Stallcup that he had been researching "in the streets" to determine who took the missing firearms and could possibly get them back for $150 each. According to Officer Vest, Stallcup told Hagman to "do what he had to do to find these weapons."

The government argues, essentially, that because Hagman was a convicted felon, it was unlawful for him to seek to obtain Stallcup's eleven missing firearms.[5] We disagree. We are unaware of any section of the United States Code that makes it unlawful for a felon to attempt to possess or obtain a firearm. *See United States v. Duka*, 671 F.3d 329, 353–55 (3d Cir. 2011) (recognizing that there is no general federal attempt statute); *United States v. Douglas*, 525 F.3d 225, 251 (2d Cir. 2008) (recognizing that there is "no general federal statute proscribing attempt" and "an attempt to commit criminal conduct is . . . *actionable only where . . . a specific criminal statute makes impermissible its attempted as well as actual violation"* (second omission in original) (internal quotation marks and citation omitted)). The government, as the party who has the burden of proof in this matter, must demonstrate by a preponderance of evidence not only that Hagman sought to obtain the eleven missing firearms, but also that his doing so was unlawful. The government's argument that Hagman's conduct was unlawful, without supporting authority, is without merit.

**B.**

In summary, we conclude that the application of this enhancement was premised upon an inference that Hagman was involved in the burglary of Unkle Dick's rather than a preponderance of evidence. The fact that the government argues that Hagman had actual possession of the firearms,

---

[5] The government's brief posits that Hagman's "admitted attempt to obtain the weapons was unlawful as he was a convicted felon who could not lawfully possess or obtain firearms."

11

constructive possession of the firearms, and unlawfully sought to obtain the fireams, in tandem, suggests that Hagman's role in the burglary is an unsolved mystery. We recognize that Hagman taking the Titan FIE around the same time as the burglary is a questionable coincidence. That notwithstanding, the improbability of such a coincidence is not, in and of itself, proof by a preponderance of evidence. The curiosity of a coincidence is no substitute for the caution that must be employed in applying sentencing enhancements that ultimately result in a defendant facing a more extended period of incarceration.[6] Borrowing from the government's description of the evidence in this case, whether Hagman was involved in taking the eleven missing firearms is "murky." We conclude that evidence of this variety does not satisfy the level of proof necessary for the application of a sentencing enhancement under § 2K2.1(b)(1)(B).

"[T]he preponderance standard goes to how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found." *United States v. Wilson*, 322 F.3d 353, 361 (5th Cir. 2003) (citation omitted). If the evidence appears to be equally balanced, or we cannot say upon which side it weighs heavier, we must resolve the question in favor of the defendant because the burden of proof on this issue remains with the government. *See id.*

Therefore, we hold that the government failed to prove by a preponderance of evidence that Hagman possessed or unlawfully sought to

---

[6] The application of § 2K2.1(b)(1)(B) resulted in a four-level increase to Hagman's offense level. Ultimately, the district court found that Hagman's total offense level was 17 and that his criminal history category was five. This yielded a guideline range of 46–57 months' imprisonment. The district court sentenced Hagman to 46 months' imprisonment. Without the four-level increase, Hagman's total offense level would be 13 and his guideline range would be 30–37 months' imprisonment.

obtain between eight and twenty-four firearms. Accordingly, we VACATE Hagman's sentence and REMAND for resentencing.