# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2021

Lyle W. Cayce
Clerk

No. 19-11010

United States of America,

*Plaintiff—Appellee*,

*versus*

Lee White,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CR-638-1

Before King, Elrod, and Willett, *Circuit Judges*.

Per Curiam:*

On April 9, 2019, pro se defendant-appellant Lee Dale White pled guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(b)(1)(C) and possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). White was subsequently sentenced to 94 months' imprisonment and three years of supervised release.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-11010

He now appeals the sentence, arguing that the district court erred in its application of the Sentencing Guidelines and imposed a substantively unreasonable sentence. He also challenges his conviction under 18 U.S.C. § 922(g)(1), citing the Supreme Court decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

For the reasons stated below, we AFFIRM White's conviction under 18 U.S.C. § 922(g)(1), VACATE his sentence, and REMAND to the district court for resentencing in accordance with this opinion.

## I.

On August 23, 2017, an undercover agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") purchased marijuana and crack cocaine from pro se defendant-appellant Lee Dale White. After the purchase, a surveillance team followed White to 2701 Burger Avenue Dallas, Texas, where he was observed unlocking the door and entering the residence. Another purchase of crack cocaine was arranged by an undercover agent on October 11, 2017, and a surveillance team observed White stop at 2701 Burger Avenue prior to meeting the agent. White was observed returning to the Burger Avenue address after the purchase.

On November 28, 2017, a "trash pull"[1] was conducted at 2701 Burger Avenue, yielding a shoe box with marijuana, a letter addressed to White, drug packaging materials, drum magazine instructions, .223-caliber ammunition boxes, and measuring cups with cocaine residue. On November 30, 2017, Dallas Police Department officers executed a search warrant at the address, where officers encountered White and two other individuals inside the residence. A search of the living room yielded cocaine, marijuana, and

---

[1] "A 'trash pull' is the term for searching the trash after a suspect has been observed discarding trash." *United States v. Haines*, 803 F.3d 713, 723 n.1 (5th Cir. 2015).

No. 19-11010

assorted pills.  They also found a rifle magazine and a Glock magazine.

The officers' search of the bedroom yielded, *inter alia*, $3,466 in U.S. currency, 166.4 grams of cocaine, 705 grams of marijuana, and clothing with a dry-cleaning tag in White's name. A search of the property's garage yielded $241 in U.S. currency, 2.6 grams of cocaine, a drum magazine box with 59.3 grams of marijuana, and a .40 caliber handgun.

Two vehicles found on the property were also searched: a 2007 Chevy Tahoe and a 2001 Mercedes-Benz. After searching both vehicles, officers found a second .40-caliber pistol with live rounds, a box of Promethazine, 88 grams of marijuana, 134.9 grams of cocaine, 46.8 grams of vapor liquids, a scale, drug packaging materials, a .223-caliber rifle,[2]  another .40-caliber handgun, and miscellaneous documents containing White's name.

The presentence report ("PSR")—on which the district court relied at sentencing and to which the Government cites on appeal—does not specify what items were found in each vehicle. Indeed, it fails to even identify the vehicles. However, both White and the Government agree that the .40-caliber Glock pistol and a particular document—the title to the Mercedes—were found in the Tahoe. White further concedes that the Tahoe belonged to him but states that the title to the Mercedes was not in his name. The parties agree that the drugs retrieved from the vehicles and the rest of the firearms—including the other .40-caliber handgun and the .223-caliber rifle—were located in the Mercedes. But White contends that the Mercedes belonged to another individual in the house.

White was arrested on December 4, 2018, and subsequently pled guilty to two counts: possession with intent to distribute a controlled

---

[2] This is a semiautomatic firearm that had an extended magazine attached, which meant it was capable of accepting more than fifteen rounds of ammunition.

substance and possession of a firearm by a felon. In support of the second count, White stipulated that he was previously convicted of a crime punishable by imprisonment for a term exceeding a year and knowingly and unlawfully possessed a .40-caliber Glock pistol after having been convicted of the felony.

On June 12, 2019, the PSR was issued in White's case, setting his base offense level at 22 pursuant to the United Sates Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(3) because White's offense involved both a semiautomatic firearm capable of accepting a large-capacity magazine and White had a prior conviction for a controlled substance offense. The PSR also recommended a two-level enhancement under § 2K2.1(b)(1)(A) because the offense involved at least three firearms. It further added four levels under § 2K2.1(b)(6)(B) because White possessed a firearm in connection with another felony offense—in this case, drug trafficking. The PSR ultimately calculated a total offense level of 25 after subtracting three levels for acceptance of responsibility. With White's criminal history category of IV, his advisory Guidelines range was 84 to 105 months.

White filed objections to the PSR and argued that the money, drugs, and firearms found in the garage and the Mercedes belong to another man, B.B., whom police encountered in the garage while executing the search warrant. White argued that the firearms and drugs found in the garage and Mercedes could not be factored into the offense level calculation as they were not in his actual or constructive possession. Though White conceded that the Chevy Tahoe belonged to him, he asserted that the title to the Mercedes was present in that vehicle because he was passing it from his girlfriend to B.B. after B.B. had purchased the vehicle from her. The probation officer responded in an addendum, stating that no changes to the PSR would be made.

No. 19-11010

At a subsequent sentencing hearing, defense counsel for White notified the court that White's girlfriend was present and available to testify that she sold the Mercedes to B.B. and had given White the title to pass along to B.B. He further asserted that B.B. had informed officers that the gun found in the garage would have his fingerprints on it. The district court ultimately overruled White's objections "for the reasons stated in the addendum to the PSR as well as the arguments presented by the Government." The court then sentenced White to 94 months' imprisonment—in the middle of the Guidelines range. This appeal followed.

## II.

On appeal, White challenges those aspects of his sentence calculation that relied on or took into account the firearms found in the Mercedes, including the base level of 22 for an offense involving a semiautomatic firearm capable of accepting a large capacity magazine, the two-level enhancement for an offense involving three to seven firearms, and the four-level enhancement for possession of a firearm in connection with another felony offense. He also contests the attribution of drugs found in the Mercedes and garage to him and argues that the district court imposed a substantively unreasonable sentence. Finally, he challenges his conviction for being a felon in possession of a firearm pursuant to the Supreme Court's *Rehaif* decision. We consider each argument in turn.

## A. Base Offense Level Under U.S.S.G. § 2K2.1(a)(3)

White contends that the district court erred in applying U.S.S.G. § 2K2.1(a)(3) to determine a base offense level of 22 based on the court's erroneous finding that the offense involved a semiautomatic firearm capable of accepting a large capacity magazine. We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *See United States v. Cortez-Gonzalez*, 929 F.3d 200, 203 (5th Cir.

2019). In particular, "[t]he determination of relevant conduct is a factual finding reviewed for clear error." *United States v. Hagman*, 740 F.3d 1044, 1048 (5th Cir. 2014). "Under the clearly erroneous standard, we will uphold a finding so long as it is plausible in light of the record as a whole." *Id.* (quoting *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009)). "[A] finding will be deemed clearly erroneous if, based on the record as a whole, we are left with the definite and firm conviction that a mistake has been committed." *Id.* "The government must prove sentencing enhancements by a preponderance of the evidence." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010). In addition, "[a] district court may draw reasonable inferences from the facts when determining whether an enhancement applies." *Id.*

Section 2K2.1(a)(3) provides for a base offense level of 22 if:

> (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense . . .

U.S. Sent'g Guidelines Manual § 2K2.1(a)(3). In White's case, the PSR applied § 2K2.1(a)(3) because "the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine." Specifically, the .223-caliber rifle recovered during the execution of the search warrant was a semiautomatic firearm with an extended magazine attached that was capable of accepting more than 15 rounds of ammunition. The parties agree that this firearm was found in the Mercedes. Because White argues that the Mercedes belonged to B.B., he contends that he did not have possession of the .223-caliber rifle.

No. 19-11010

The Government responds that, though it had not sought to prove that White exercised actual possession of the gun in the form of direct physical control, the "circumstances enabled the district court to find by a preponderance of the evidence that White constructively possessed" the guns in the Mercedes. The Government cites three facts in support of White's constructive possession: (1) the title to the Mercedes was found in White's Tahoe; (2) the keys to the Mercedes were found in the same room as White; and (3) "the distribution quantities and varieties of drugs and accoutrements of trafficking found in the Mercedes . . . matched the varieties of drugs and trafficking implements found in White's control in the house."

"Constructive possession of a firearm can be proven by showing that the defendant had ownership, dominion, or control over the firearm or the premises in which it was concealed or recovered." *Hagman*, 740 F.3d at 1049. "Constructive possession need not be exclusive, it may be joint with others, and it may be proven with circumstantial evidence." *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992). We have previously explained that "constructive possession is the ability to reduce an object to actual possession." *United States v. Posner*, 868 F.2d 720, 723 (5th Cir. 1989) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979)). Typically, "the issue of constructive possession is raised . . . where a defendant is found to be in the vicinity of a firearm but not in actual possession of it; a firearm is found in his residence . . . or . . . in some other place over which the defendant has dominion or control." *Hagman*, 740 F.3d at 1049–50.

The Government cites no case in which we have found constructive possession of a firearm based on a such a paucity of evidence linking the defendant to the premises or vehicle in which the firearm was found. To be sure, the Government's evidence falls short of establishing White's ownership of the Mercedes—even by a preponderance of the evidence.

Indeed, there is no evidence clarifying in whose name the title to the Mercedes is made. *Cf. Am. Econ. Ins. Co. v. Tomlinson*, 12 F.3d 505, 508 n.2 (5th Cir. 1994) (explaining that, under Texas law, "[a] certificate of title is not conclusive proof of ownership" but "merely creates a presumption of ownership in the name of the person shown on the certificate"). On appeal, the Government cites to White's objections to the PSR for support of the fact that the title was found in the Tahoe. However, in the very objections on which the Government relies, White asserts that the title was not in his name. The Government offers no evidence to the contrary.

The question is therefore whether White's dominion or control over the vehicle has been established. There is no evidence that White ever drove the Mercedes. *See, e.g.*, *United States v. Prudhome*, 13 F.3d 147, 149 (5th Cir. 1994) (finding sufficient evidence of constructive possession where defendant was driving vehicle, "the gun was located directly under his seat, and he had three rounds of matching ammunition in his waist pouch"). Nor is there evidence that the vehicle was kept at his house beyond the day of the search. *See, e.g.*, *United States v. Orozco*, 715 F.2d 158, 161 (5th Cir. 1983) (constructive possession of firearm located in vehicle where defendant-passenger did not own vehicle but it "was being kept at his house"). Further, the mere presence of the vehicle's keys in the same room as the defendant is not sufficient to establish White's control of the vehicle. The record does not support that White had actual possession of the keys, which would support his control over the vehicle.[3] *See, e.g.*, *United States v. Caballero*, 712 F.2d 126, 129–30 (5th Cir. 1983). Moreover, in cases where mere proximity to a

---

[3] Despite the Government's attempt to characterize the evidence in the PSR and its addendum as supporting that White "possessed" the keys to the Mercedes, the addendum merely states that "agents encountered the defendant in the living room . . . , where the keys to the Mercedes-Benz were located."

No. 19-11010

vehicle's keys has been sufficient to demonstrate control of the vehicle, we have emphasized additional facts such as the defendant's consent to a search of the vehicle and familiarity with "the key's idiosyncratic functionality." *United States v. Fields*, 977 F.3d 358, 366 (5th Cir. 2020). In those cases the mere presence of the defendant in the same room as the keys was not alone enough to find constructive possession.

Based on the foregoing, we find that the Government has not shown that White was in constructive possession of the requisite semiautomatic weapon. Recognizing that the Government need only prove sentencing enhancements by a preponderance of the evidence, we nonetheless conclude that the finding is simply not plausible in light of the record as a whole and is thus clearly erroneous. *Hagman*, 740 F.3d at 1049–50. Consequently, there is no evidence supporting the base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) absent other evidence that White's offense involved a semiautomatic firearm capable of accepting a large-capacity magazine.

**B. Enhancement Under U.S.S.G. § 2K2.1(b)(1)**

White argues that the district court erred in imposing a two-level enhancement under U.S.S.G. § 2K2.1(b)(1) for an offense involving three to seven firearms. As above, we review for clear error. *Hagman*, 740 F.3d at 1048. Once again, the Government must prove this sentencing enhancement by a preponderance of the evidence. *Id.*

Section 2K2.1(b)(1) provides for a two-level enhancement when an offense involves three to seven firearms. U.S. Sent'g Guidelines Manual § 2K2.1(b)(1). The district court is instructed to "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." U.S. Sent'g Guidelines Manual § 2K2.1, cmt. (n.5). In order to reach the minimum number of guns required to apply the enhancement in this case, the Government must count the firearms found in

the Mercedes. Accordingly, for the reasons stated in the preceding section, we find clear error in the application of § 2K2.1(b)(1) insofar as the district court erroneously found that White had constructive possession of the firearms in the Mercedes.

## C. Enhancement Under U.S.S.G. § 2K2.1(b)(6)(B)

White challenges a four-level enhancement he received pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense. White argues there is an insufficient factual basis supporting this enhancement and that the record demonstrates only that he possessed a gun while simultaneously engaging in a drug trafficking offense without a sufficient nexus between the gun and the trafficking. White concedes that he failed to raise this argument below and that, as a result, we must review for plain error. Under this standard of review, the defendant must show (1) an error (2) that is clear or obvious and (3) that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If those three prongs are satisfied, we have the discretion to correct the error but will do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Section 2K2.1(b)(6)(B) provides for a four-level enhancement where the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S. Sent'g Guidelines Manual § 2K2.1(b)(6)(B). The enhancement will be applied if the firearm "facilitated, or had the potential of facilitating, another felony offense." *Id.* § 2K2.1, cmt. (n.14(A)). When the other felony offense is a drug trafficking offense, the enhancement automatically applies if the "firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *United States v. Jeffries*, 587 F.3d 690, 693 (5th Cir. 2009) (quoting U.S. Sent'g Guidelines Manual § 2K2.1 cmt. (n. 14(B)(ii))).

On appeal, the Government argues that, even setting aside the firearms found in the Mercedes in close proximity to drugs, the enhancement is supported by White's possession of a pistol in his Tahoe, his movement "between his home and drug-transaction locations," and drug dealers' frequent use of firearms in their trafficking activities. The Government emphasizes that White cannot show clear or obvious error under the plain error standard.

White emphasizes that there were no drugs found in the Tahoe along with the firearm he admittedly possessed. However, proximity to drugs is "sufficient but not necessary" to applying this enhancement in drug trafficking cases. *United States v. Caldwell*, 770 F. App'x 175, 177 (5th Cir. 2019). Indeed, as detailed above, the enhancement may still apply if the firearm "had the potential of facilitating . . . another felony offense." U.S. Sent'g Guidelines Manual § 2K2.1, cmt. (n.14(A)). In this case, where the firearm was found in White's vehicle and the PSR clearly states that White traveled to both of the arranged drug sales, White has identified no clear or obvious error in a finding that the firearm had the potential of facilitating his drug trafficking. Accordingly, we affirm application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

## D. Calculation of Drug Weight

White also raises a challenge to the PSR's inclusion of drugs found in the Mercedes and garage in the 61.63 kilograms of converted drug weight attributed to him. Based on this claimed error, he argues that his correct base offense level was 16. However, as White admitted in his objections to the PSR, even if his offense level is not calculated pursuant to U.S.S.G. § 2K2.1(a)(3) based on the possession of the semiautomatic firearm in the Mercedes, it would not be based on the amount of drugs attributable to White. Rather, his base offense level would be 20 pursuant to § 2K2.1(a)(4)

No. 19-11010

because he committed the offenses subsequent to sustaining a felony conviction of a controlled substance offense. Accordingly, because White's argument on this issue, even if successful, would not affect the calculation of the Sentencing Guidelines range, we do not consider it. *See United States v. Roberts*, 594 F. App'x 249, 250 (5th Cir. 2015).

### E. Substantive Reasonableness of the Sentence

White argues that the district court imposed a substantively unreasonable sentence by "varying upward from the advisory guidelines range." White appears to rely on his own calculations of his base offense level and corresponding Guidelines range in advancing this argument. However, we proceed to review a sentence for substantive reasonableness "[i]f the sentence is determined to be 'procedurally sound.'" *United States v. Delgado-Martinez*, 564 F.3d 750, 752 (5th Cir. 2009). Indeed, a significant procedural error in the calculation of the Guidelines range that warrants reversal—such as those discussed above—will "prevent our review of the sentence for substantive reasonableness." *Id.*; *see, e.g.*, *United States v. Teuschler*, 689 F.3d 397, 400 (5th Cir. 2012) (declining to consider substantive reasonableness of sentence because we remanded for resentencing and "the new sentence may differ"). Accordingly, because we have already identified errors in the calculation of White's Guidelines range that warrant reversal, we will not consider the substantive reasonableness of White's sentence.

### F. Felon in Possession Conviction

White challenges his conviction under 18 U.S.C. § 922(g)(1) for being a convicted felon in possession of a firearm because the Government did not show that he knew his prohibited status. In *Rehaif v. United States*, the Supreme Court held that the Government must establish knowledge not only of possession but also of prohibited status in order to support a conviction

under § 922(g). 139 S. Ct. at 2194. White accepts that, because this argument was not raised below, we review for plain error. *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020). As discussed above, the defendant must show (1) an error (2) that is clear or obvious and (3) that affected his substantial rights. *Puckett*, 556 U.S. at 135. In similar *Rehaif*-based challenges, we have held that, under the third prong of plain error review, a defendant must show that "there is a reasonable probability that he would not have pled guilty had he known of *Rehaif*." *Lavalais*, 960 F.3d at 187 (cleaned up).

With regard to the first and second prongs of plain error review, we have previously held that, where a district court did not consider whether the factual basis provided sufficient evidence that the defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, the error is clear and obvious. *See United States v. Brandon*, 965 F.3d 427, 431 (5th Cir. 2020). Though *Rehaif* had not been decided at the time of White's guilty plea, we nonetheless assess the district court's error at "the time of appellate consideration." *Id.* Accordingly, we find that the district court's error was clear and obvious under current law. *See id.* at 432.

However, moving to the third prong of plain error review, we find that White is not entitled to relief because he has not shown that the district court's error affected his substantial rights. Specifically, he cannot show that "there is a reasonable probability that he would not have pled guilty had he known of *Rehaif*." *Lavalais*, 960 F.3d at 187. Indeed, in evaluating this prong, we have previously considered evidence that was "overwhelming" that a defendant "knew he was a felon when he possessed the firearm[] at issue." *Id.*; *see also Brandon*, 965 F.3d at 433. For example, in *Lavalais*, we emphasized that a defendant had admitted to being a felon convicted of a crime punishable by more than one year in his factual basis and had in fact been sentenced to a two-year sentence. 960 F.3d at 187; *see also United States v. Montgomery*, 974 F.3d 587, 591 (5th Cir. 2020) (relying on the fact that

defendant "had spent several years in prison only a couple years before the crimes in question"). Similarly, in his stipulated factual basis, White admitted to having been previously convicted of a crime punishable for a term exceeding one year and the PSR reflects that he was in fact sentenced to 120 months' imprisonment in 2010. Because the record establishes that White had knowledge of his status as a convicted felon when he possessed the firearm, there is no reasonable probability that he would have refused to enter the plea absent the district court's error. *See Brandon*, 965 F.3d at 433. Accordingly, the district court's acceptance of the factual basis for White's guilty plea was not in plain error.

## III.

For the foregoing reasons, we AFFIRM White's conviction under 18 U.S.C. § 922(g)(1), VACATE his sentence, and REMAND to the district court for resentencing in accordance with this opinion.