# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 5, 2021

Lyle W. Cayce
Clerk

No. 20-50304

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TREDON SMITH,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CR-168-1

Before KING, SMITH, and HAYNES, *Circuit Judges*.

HAYNES, *Circuit Judge*:

While at a friend's house, Tredon Smith touched a Smith & Wesson .38 caliber revolver. He later pleaded guilty to being a felon in possession of that firearm in violation of 18 U.S.C. § 922(g)(1). In connection with his guilty plea, he signed a factual basis document indicating the only interaction he had with the firearm was that he had "touched" it. The district court accepted that factual basis as sufficient to sustain Smith's § 922(g)(1) conviction. For the following reasons, we VACATE Smith's guilty plea, conviction, and sentence and REMAND for entry of a new plea and necessary proceedings thereafter.

No. 20-50304

## I.     Background

Midland, Texas police officers arrested Smith after they recovered three stolen firearms on April 6, 2019. Following his arrest, Smith was shown a picture of one of the firearms—a Smith & Wesson .38 caliber revolver—which he admitted to having seen and touched at a friend's house. He stated that he did not remember touching the other firearms.[1]

Smith was later arrested and charged with being a felon in possession of the .38 revolver on or about April 29, 2019[2] in violation of 18 U.S.C. § 922(g)(1). Smith pleaded guilty to the charge. In connection with that plea, Smith signed a factual basis indicating that he had "touched" the firearm, which the district court accepted as a sufficient basis for his conviction. The district court then sentenced Smith to 57 months of imprisonment, with three years of supervised release to follow. Smith timely appealed.[3]

---

[1] The dissenting opinion focuses on Smith's other "criminal activities"—stating that Smith "is a leader of a street gang" and that Smith was found "fleeing the scene of a vehicle burglary" two months after his touching of the .38 revolver as "relevant," but they are not.

The dispositive question in this appeal is whether there was a sufficient factual basis to convict Smith for possessing the .38 revolver. That he may have been involved in other misconduct—even misconduct involving *other* firearms—says nothing at all about whether he possessed *this* firearm.

[2] As noted above, Smith's alleged possession of the .38 revolver could not have occurred later than April 6, the date officers recovered the firearms. The date charged was "on or about" April 29, but Smith did not argue in his briefs that the discrepancy in dates impermissibly stretches the "on or about" language used in the indictment, so we do not comment further on the issue.

[3] Smith raises several issues but because of our ruling on the plea, we do not reach any others.

2

No. 20-50304

## II.    Jurisdiction

The district court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction to review Smith's conviction under 28 U.S.C. § 1291.

## III.    Discussion

Smith challenges his plea colloquy, primarily contending that the district court incorrectly concluded that his admission to having "touched" the .38 revolver constituted a sufficient basis for possession as required to sustain a conviction under 18 U.S.C. § 922(g)(1).[4]  Smith did not raise this argument in the district court, so our review is for plain error.  To demonstrate plain error, Smith must show (1) an error (2) that is "clear or obvious" and (3) that affects his "substantial rights."  *Puckett v. United States*, 556 U.S. 129, 135 (2009); *see also United States v. Vonn*, 535 U.S. 55, 58–59 (2002) (noting that plain error review applies to alleged deficiencies in plea colloquies); *United States v. Marek*, 238 F.3d 310, 315 & n.16 (5th Cir. 2001) (en banc) (same).  If we conclude there was a plain error, we have the discretion to correct it if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Puckett*, 556 U.S. at 135 (cleaned up).

### 1.    Clear or Obvious Error

Among other requirements, Federal Rule of Criminal Procedure 11 requires a federal district court taking a guilty plea to independently evaluate whether the defendant's admitted-to conduct actually constitutes a violation of the statute under which he is charged.  *Marek*, 238 F.3d at 314.  Typically, our review centers on the facts the defendant admitted to at the time of his

---

[4] Although Smith sometimes characterizes his argument as challenging his understanding of the charge against him or the voluntariness of his plea, we address only the crux of his argument: that his touching of the .38 revolver was insufficient to establish possession.

plea colloquy—including information from any factual basis document submitted to the district court. *Id.* But where, as here, review is for plain error, we may also "scan the entire record" for any other facts supporting the conviction. *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010).

Smith pleaded guilty to possessing the .38 revolver in violation of 18 U.S.C. § 922(g)(1). That statute prohibits a felon like Smith from "knowingly possess[ing] a firearm," either actually or constructively. *United States v. Huntsberry*, 956 F.3d 270, 279 (5th Cir. 2020); *United States v. Meza*, 701 F.3d 411, 418–19 (5th Cir. 2012). A defendant has actual possession over a firearm when he has "direct physical control"—such as when he has the firearm "on his person," is seen "carrying the firearm," or is tied to the firearm with "forensic evidence." *United States v. Hagman*, 740 F.3d 1044, 1048, 1049 & n.2 (5th Cir. 2014) (collecting cases). Constructive possession is broader: a defendant has constructive possession when he has "ownership, dominion, or control" over either the firearm itself or over the premises in which the firearm is found. *Id.* at 1049. The common denominator between the two is control; absent some indication that the defendant controlled the firearm, conviction is improper under either theory of possession.[5] *Id.*

There is no evidence in the record that Smith had either actual or constructive possession of the .38 revolver (indeed, the Government all but abandoned the notion of constructive possession). At the outset, it is undisputed that Smith did not control the relevant premises (his friend's

---

[5] The dissenting opinion takes issue with our citations to constructive possession cases because it views this case as turning entirely on actual possession, which the dissenting opinion seems to think is entirely divorced from the concepts underlying possession generally. Our consideration of constructive possession cases in this context is not novel; it is a straightforward recognition that both kinds of possession—actual and constructive—require the Government to demonstrate control over an item. *Hagman*, 740 F.3d at 1048–49.

No. 20-50304

residence), and there is no evidence in the record that Smith owned the .38 revolver or otherwise controlled it or its location.

Turning to direct possession, the only evidence in the entire record regarding Smith's interaction with the .38 revolver is his admission to "touching" the firearm.[6]  The Government's argument that we should also consider the "fact" that Smith's fingerprints were on the .38 revolver is unavailing for the simple reason that it is not a fact at all.[7]  We see no evidence

---

[6] The relevant portion of the factual basis states:

> While speaking with SMITH, Detective Sedillo showed SMITH a photograph of a firearm that he had previously recovered.  SMITH stated that he had seen and touched the firearm at a friend's house prior to Detective Sedillo recovering the firearms.  SMITH during the interview knew the caliber of the firearm in the picture that was shown to him without Detectives mentioning it.  When SMITH was confronted again about the three firearms and why his fingerprints would be on them, SMITH stated, "I don't remember touching the rest of those guns, but I know for a fact that I touched the .38."

[7] We note that the presence of a defendant's fingerprints on contraband can support the conclusion that the defendant possessed the item if the prints suggest some degree of control.  *United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999) (reasoning that the presence of a defendant's thumbprint on a box of ammunition stored in a house the defendant frequented allowed the jury to infer that the defendant "knew that the box was there and that he possessed control over it"); *United States v. Geiger*, No. 92-8579, 1993 WL 309940, at *3 (5th Cir. May 13, 1993) (per curiam) (noting that a fingerprint on an ammunition magazine—"a component that may be removed from the firearm"—supported a constructive possession finding). *But see United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (per curiam) (reversing a possession conviction because the evidence at trial showed only that the defendant's fingerprint was on one firearm and that he had stood close to a waste basket containing two firearms in another person's house); *United States v. Wilson*, 922 F.2d 1336, 1338–39 (7th Cir. 1991) (noting that although the presence of a fingerprint was "fully consistent with innocence," a jury could nonetheless find that fact supported possession).

We need not resolve whether fingerprints are sufficient *on their own* to sustain a possession conviction because, as we discuss, there is no evidence here that Smith's fingerprints were actually on the .38 revolver.  Contrary to the dissenting opinion's suggestion, that *would* be something in need of resolution from scratch; none of the cases

that Smith's fingerprints were actually on the firearm. The factual basis does not say that they were. It merely indicates that officers asked Smith "why his fingerprints *would be*" there. A detective's question is not evidence of a fact: it could just as easily be an interrogation tactic to get Smith to confess; indeed, the officers posed the same question with respect to two *other* firearms that Smith maintains he never touched at all. In fact, we see no actual evidence of any fingerprints whatsoever (and the Government points to nothing else), let alone the sort of fingerprint evidence that would suggest Smith controlled the firearm. If the Government had that evidence, presumably, it could easily have included it in the record since possession of other firearms was a question in the sentencing process.

The Government also seems to suggest that possession can be inferred from the fact that Smith knew the caliber of the .38 revolver without officers mentioning it to him. But even if we made the questionable assumption that an individual's knowledge of an object's features can imply prior control over the object,[8] the officers here showed Smith the picture of the .38 revolver

---

the dissenting opinion cites answers the question for us. *Cf. Hagman*, 740 F.3d at 1049 (concluding that there was insufficient evidence of actual possession in part because "no forensic evidence link[ed] [the defendant] to the . . . firearms"); *De Leon*, 170 F.3d at 497 (noting that the evidence "taken as a whole"—including both the presence of a fingerprint on an ammunition box *and* the defendant's frequenting of the house where the box was kept—supported an inference of constructive possession but that the same evidence *was not* sufficient to find actual possession); *United States v. Tyler*, 474 F.2d 1079, 1081 (5th Cir. 1973) (per curiam) (reasoning that a fingerprint on a check can create an *inference* of actual possession (citing *Stoppelli v. United States*, 183 F.2d 391 (9th Cir. 1950), *abrogation recognized by United States v. Nevils*, 598 F.3d 1158, 1165–66 (9th Cir. 2010))).

[8] Our cases suggest that knowledge of an object's *location* can support at least a constructive possession finding—but we do not appear to have reached the same conclusion with respect to knowledge of an object's *features*. *See, e.g.*, *United States v. Mudd*, 685 F.3d 473, 478 (5th Cir. 2012) (concluding that there was sufficient evidence of constructive possession where, in part, the defendant identified that the firearm in question had been in a black bag). To be sure, knowledge of *some* features—such as those that only

before he told them its caliber.  So, there is no evidence that Smith had private knowledge indicating prior control; he could have simply determined the caliber by looking at the picture.  Dominion or control over this particular firearm was not necessary to know that fact.

There is no other evidence in the record suggesting more than simple touching; Smith made no further admissions suggesting any sort of deeper involvement with the firearm at any point, and the affidavit submitted in connection with the criminal complaint and arrest warrant just contains the same information as the factual basis.  At bottom, then, the only fact that could conceivably support possession is Smith's admission to merely "touching" the .38 revolver.

The plain text of § 922(g), logic, and an analysis of our precedents all reveal that mere touching is insufficient to establish possession.  First, the text.  The statute, § 922(g), proscribes only "possess[ing] . . . [a] firearm." 18 U.S.C. § 922(g).  A look at the dictionary confirms the common-sense intuition that possession does not encompass mere touching; to possess something is to control it—it is "to be master of" the thing or "to have and hold [it] as property."  WEBSTER'S NEW INTERNATIONAL DICTIONARY 1926 (2d ed. 1934) ("WEBSTER'S SECOND").[9]  By contrast, to touch something is merely "[t]o lay the hands, fingers, etc., upon

---

become evident on physical interaction or prolonged exposure—could plausibly support a possession finding.  But we strain to think of how knowledge of an object's general features (for example, a firearm's caliber, as here) could meaningfully suggest prior possession, especially where those features could be discerned from briefly seeing the object.

[9] The lack of touching as a sufficient stand-alone basis for possession is consistent across dictionaries.  *See Possess*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To have in one's actual control[.]"); WEBSTER'S NEW INTERNATIONAL DICTIONARY 1770 (3rd ed. 1961) ("[T]o have and hold as property"; "[to] be master of"; or to "seize or gain control of"); AMERICAN HERITAGE DICTIONARY 1375 (5th ed. 2011) ("To have under one's power or control[.]").

so as to feel" it or "to perceive [it] by means of the tactile sense." *Id.* at 2676.[10]

No one would confuse the simple act of laying a hand or finger on an item, on its own, as making someone the "master" over the item. Every day, humans touch countless things we don't "possess," such as countertops at the grocery store. (Why else would there be sanitizer dispensers everywhere during a pandemic?). To say all of those interactions are *possession* wildly expands the logical definition of that word.

The dissenting opinion argues that we reach that conclusion only after having selectively chosen to rely on the Webster's Second dictionary,[11] which, the dissenting opinion asserts, is too old to provide an accurate definition for the use of the word "possess" in 1986 (the year the term was added to § 922(g)).[12] Why the dissenting opinion takes issue with the definitions we have cited is unclear. After all, the "master of" connotation we have discussed also appears in the dissenting opinion's preferred source, Webster's Third—as does the synonymous "control" connotation, which

---

[10] *See also* WEBSTER'S NEW INTERNATIONAL DICTIONARY 2415 (3rd ed. 1961) ("[T]o bring a bodily part briefly into contact with so as to feel" or "to perceive or experience [it] by means of the tactile sense"); AMERICAN HERITAGE DICTIONARY 1836 (5th ed. 2011) ("To cause or permit a part of the body, especially the hand or fingers, to come in contact with so as to feel[.]").

[11] In reality, far from "cherry-picking" only one source, we have identified a range of other dictionaries—including ones the dissenting opinion cites—that support our position. *See supra* note 9.

[12] We note that, as initially enacted in 1968, § 922 had other references to "possession"—and so it is conceivable that § 922(g) was merely importing the 1968-era connotations of that word when it added the particular term "possess." *See* Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, 1220 (1968). Even assuming arguendo that the specific addition of "possess" to § 922(g) resets the appropriate interpretive lens to the year 1986, however, we are still confident that Webster's Second supports our understanding of the statute.

appears in all the dictionaries cited in both opinions. *See* Webster's New International Dictionary 1770 (3rd ed. 1961) ("Webster's Third"). What's more, these connotations (in Webster's Second and elsewhere) are plainly applicable to *both* constructive and actual possession— it is, for example, no innovation to say that one can be "master of" something by exercising "direct physical control" over it. *Hagman*, 740 F.3d at 1048.

Whatever the cause for concern with respect to Webster's Second, we are unpersuaded. The Supreme Court has used that dictionary to interpret authorities from 1986.[13] It has also used it in interpreting provisions of the United States Code related to § 922.[14] Our court, too, has used it in interpreting a range of modern statutes.[15] The dictionary is, after all, widely considered to be "exhaustive on traditional legal and literary terms." Jeffrey

---

[13] *See United States v. Santos*, 553 U.S. 507, 511 (2008) (citing Webster's Second and two other dictionaries in interpreting 18 U.S.C. § 1956(a)(1)(A)(i), enacted 1986); *Alabama v. North Carolina*, 560 U.S. 330, 340 (2010) (citing Webster's Second in interpreting an interstate compact that took effect in 1986); *see also*, *e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 848 (2018) (citing Webster's Second, Webster's Third, Black's Law Dictionary, and other dictionaries, in interpreting 8 U.S.C. § 1225(b)(1)(B)(ii), enacted 1996).

[14] *See Johnson v. United States*, 559 U.S. 133, 140 (2010) (citing Webster's Second in interpreting 18 U.S.C. § 924(e)(2)(B)); *Smith v. United States*, 508 U.S. 223, 228–29 (1993) (citing Webster's Second in interpreting 18 U.S.C. § 924(c)(1)).

[15] *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health & Human Servs.*, 985 F.3d 472, 479 (5th Cir. 2021) (citing Webster's Second in interpreting 45 C.F.R. § 160.103, as modified in 2013); *In re Ran*, 607 F.3d 1017, 1028 (5th Cir. 2010) (citing Webster's Second in interpreting 11 U.S.C. § 1502(2), enacted 2005); *IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d 232, 239 & n.21 (5th Cir. 2019) (citing Webster's Second in interpreting 28 U.S.C. § 1442(a)(1), as amended 1996), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc); *see also United States v. Bailey*, 115 F.3d 1222, 1236 (5th Cir. 1997) (Smith, J., dissenting) (citing Webster's Second and Black's Law Dictionary for the proposition that "[i]t is axiomatic that the word 'commerce' is, and has always been, tantamount to 'trade,' the exchange of goods and services by purchase and sale").

No. 20-50304

L. Kirchmeier & Samuel A. Thumma, *Scaling the Lexicon Fortress: The United States Supreme Court's Use of Dictionaries in the Twenty-First Century*, 94 Marq. L. Rev. 77, 96 (2010) (quoting Antonin Scalia & Bryan Garner, Making Your Case: The Art of Persuading Judges 213 (2008)). Webster's Second is, in short, perfectly well-suited to the task at hand.

Why, then, the dissenting opinion's difficulty with it? The only reason we can see is that Webster's Second forecloses the dissenting opinion's proposed "seize" concept (which it lifts out of a Webster's Third definition that *also* includes "control" language) by describing "seize" as an "[a]rchaic" usage of "possess." Webster's Second 1926; *see generally* Kirchmeier & Thumma, *Scaling the Lexicon Fortress*, 94 Marq. L. Rev. at 96 (describing Webster's Third—the exclusive basis for the dissenting opinion's definition—as "infamously permissive in neglecting to include accurate usage tags" (quoting Scalia & Garner, Making Your Case at 213)). To treat "seize" as the definitive touchstone of possession for the purposes of § 922(g), then, would disregard the ordinary meaning of the statute's express language without any justification for doing so.[16]

---

[16] There are, of course, other problems with the dissenting opinion's "seize" definition. Most significantly, it is unclear why the dissenting opinion thinks that the answer to whether something is "seize[d]" for the purposes of its take on § 922(g) possession should be governed by *Torres v. Madrid*, a case concerning how much force is necessary to constitute a law enforcement seizure for Fourth Amendment purposes. 141 S. Ct. 989, 998 (2021); *cf.* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 418 (2012) ("Because common words typically have more than one meaning, [one] must [rely on] the context in which a given word appears."). Simply put, the focus of the Fourth Amendment analysis in *Torres* is that the law enforcement seizure of a person turns on the historical understanding of *arrests* (which, *Torres* informs us, could at common law be accomplished by mere touching—as with a mace in a 1605 Star Chamber case). *Id.* at 998–1002. That focus undermines any attempt to transplant its definition to the possession context; indeed, *Torres* affirmatively disclaims that "seizure" in the Fourth Amendment context "always entail[s] a taking of

No. 20-50304

Unsurprisingly, our case law avoids that result by sticking with the plain meaning of the text "possess." Consistent with our discussion of the common sense of the word, we have repeatedly emphasized that possession requires something more than touching.[17] *See generally Huntsberry*, 956 F.3d at 279–80; *Meza*, 701 F.3d at 419; *Hagman*, 740 F.3d at 1048–49, 1049 n.2. Moreover, we have endorsed jury instructions that prevent a jury from convicting on a possession charge for mere touching alone. Specifically, in *United States v. De Leon*, we concluded that a specific touching-is-not-possession instruction was "unnecessary" because the given instruction "already required proof that [the defendant] exercised 'dominion and control' over the [contraband]." 170 F.3d 494, 498 (5th Cir. 1999). That "dominion and control" language, we said, "implicitly instruct[s]" the jury that "simply touch[ing]" is insufficient to establish possession.[18] *Id.* The

---

possession." *Id.* at 1002. To interpret *Torres* as standing for the proposition that touching equals seizure equals possession for § 922(g) purposes (as the dissenting opinion does) thus dramatically misreads the case.

[17] We therefore need not decide every interaction with an item that could qualify as possession. We simply conclude that the level of interaction here (which, as we have discussed, begins and ends with "touching"), without more, is not enough. The dissenting opinion's various questions—"grip it? Brandish it? Hold it[?]"—are not at issue in this case.

[18] The dissenting opinion is incorrect to claim that *De Leon* is actually about whether touching a container establishes control over the container's contents. The distinction between container and contents was not at play in that case; the relevant issue in *De Leon* was whether the mere touching of an item sufficed to establish possession over the item—we addressed whether a "thumbprint on [a] *box* . . . [is] insufficient to establish . . . possession *of the box*," within which a central question was whether "mere touching is insufficient to establish constructive possession *of an item*." *De Leon*, 170 F.3d at 496 (emphasis added). Accordingly, contrary to the dissenting opinion's reading, our statement that the jury could not convict "if they found that the defendant had simply touched the ammunition on one occasion" was neither clerical error nor dicta. *Id.* at 498.

11

bottom line: our case law, like the plain text itself, confirms that merely touching an item is not enough to possess it.

Indeed, every other circuit to address the subject has reached the same conclusion: it is error to convict on mere touching alone. *United States v. Teemer*, 394 F.3d 59, 65 (1st Cir. 2005) (noting with approval that the instruction in the case "did not say that merely to touch the [firearm] constituted a crime"); *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (per curiam) (concluding that "touch[ing]" a firearm is insufficient to establish constructive possession); *United States v. Wilson*, 922 F.2d 1336, 1339 (7th Cir. 1991) ("Merely touching would not be possessing [a firearm]."); *United States v. Williams*, 29 F. App'x 486, 488–89 (9th Cir. 2002) (per curiam) (noting that "[c]ase law supports the theory that briefly sampling or handling contraband does not constitute constructive possession" and concluding that the district court reversibly erred in not giving a jury instruction that "momentarily touch[ing] or hold[ing]" is not possession (citing *United States v. Kearns*, 61 F.3d 1422, 1425 (9th Cir. 1995) (holding that the defendant did not possess marijuana by "briefly touch[ing] and smell[ing] it"))).

At bottom, the dissenting opinion's primary argument to the contrary boils down to the relatively uncontroversial proposition that the length of possession is irrelevant under § 922(g). We agree, but the problem is not whether Smith possessed the firearm for a long enough period of time, it is whether Smith possessed the firearm *at all*. *See Huntsberry*, 956 F.3d at 279. That distinction also puts to rest the dissenting opinion's assertion that our analysis examines affirmative defenses on a factual basis problem; our analysis is not about any species of justified possession defense—we only address what it takes to show the possession element itself. On that score, mere touching, standing alone, is not enough.

Thus, given § 922(g)'s plain text and the overwhelming weight of case law on the subject, we conclude that the district court committed a clear and obvious error in treating Smith's admission to touching the .38 revolver as a sufficient factual basis for his guilty plea on that charge. *See United States v. Aderholt*, 87 F.3d 740, 744 (5th Cir. 1996) ("The error is evident from a plain reading of the statute and thus, is obvious."); *United States v. Maturin*, 488 F.3d 657, 663 (5th Cir. 2007) (concluding that an error was clear and obvious when it conflicted with "plain statutory language" even though we "ha[d] never expressly determined" the issue).

### 2.    Affecting Substantial Rights

That error also affected Smith's substantial rights because, but for the error, he would not have entered the plea. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). According to Smith, the deficiency in the factual basis reflects his own (mistaken) belief that mere touching was equivalent to possession. That mistaken belief led him to plead guilty; per Smith, all he did was touch the .38 revolver and he would not have pleaded guilty had he known that was insufficient to establish possession. The error therefore affected his substantial rights.

### 3.    Serious Effect on Fairness, Integrity, or Public Reputation of Proceedings

Finally, the error also had a serious effect on the fairness and integrity of the proceedings. The fact that Smith is or could be innocent of possessing the .38 revolver is reason alone for us to correct the district court's error. *United States v. Olano*, 507 U.S. 725, 736 (1993) ("The court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant."). Certainly, Smith could seek post-conviction remedies—including by pursuing potentially viable ineffective assistance of counsel claims relating to the deficiencies in the

No. 20-50304

factual basis—if we were to decline to use our discretion in this case. But remedying this issue on direct appeal serves as a stronger safeguard of the fairness and integrity of the criminal proceedings here, appropriately providing Smith the relief he is due without any further delay.

\*       \*       \*

In sum, we hold that the district court plainly erred in accepting Smith's guilty plea to possessing the .38 revolver on the sole basis that he had touched the firearm. As that error affected the fairness and integrity of Smith's conviction, we VACATE Smith's guilty plea, conviction, and sentence and REMAND for entry of a new plea and necessary proceedings thereafter.

No. 20-50304

JERRY E. SMITH, *Circuit Judge*, dissenting:

Based on inapposite precedent and dictionary definitions, the majority precludes prosecutors from proving possession of a firearm solely through physical touch. Now, the government must show that the defendant is the "master of" the firearm—whatever that means. The majority thus engrafts a requirement reminiscent of *constructive* possession onto our law about *actual* possession and splices part of an affirmative defense onto § 922(g)'s possession requirement. Worse, it manufactures this newfangled approach on plain-error review. I respectfully dissent.

I.

Because our review is for plain error, "we may look beyond those facts admitted by the defendant during the plea colloquy and scan the entire record for facts supporting his conviction." *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010). The majority omits some relevant facts: Smith, by his own admission, is the leader of a street gang that burgles vehicles, sells narcotics, and steals, possesses, and sells firearms.

Two criminal activities give rise to this case, although the majority notes only one. First, consistently with Smith's characterization of his gang, officers found Smith fleeing the scene of a vehicle burglary. He had a glass-breaking tool in his pocket, and his hands were bleeding. The officers likewise observed blood in the vehicle. According to the vehicle's owner, the burglars moved two firearms during the burglary, taking them from under the backseat of the vehicle. Second, as the majority notes, Smith—a felon—admitted to touching a firearm at his friend's house.

The government charged Smith with possessing (1) the two guns in the burgled vehicle and (2) the firearm he touched at his friend's house. Smith agreed to plead guilty of possessing the firearm he touched at his friend's house. In exchange, the government dropped the charges concern-

15

ing possession of the two guns in the burgled vehicle. Smith now seeks to unwind his guilty plea as to the gun he touched in his friend's house.

## II.

Three problems plague the majority's conclusion that mere touching doesn't constitute possession: It (A) relies on precedent about *constructive*—not *actual*—possession, (B) relies on dictionary definitions that resemble the definition of *constructive*—not *actual*—possession, and (C) engrafts part of an affirmative defense onto the definition of "possess."

## A.

Possession can be actual or constructive.[1] The majority starts off on the right foot by noting that the government doesn't contend that Smith *constructively* possessed the firearm. And that makes sense. The government typically reserves constructive possession for situations in which officers find a weapon in the defendant's residence or some other place he frequented.[2] And, here, we don't have many facts about the premises where the gun was located. Thus, the government prudently doesn't pursue *constructive* possession and relies instead on *actual* possession.[3]

It's strange, then, that, in deciding a case about *actual* possession, the majority relies almost entirely on precedent about *constructive* possession. Take, for instance, the crux of its analysis: The majority distills from *Hunts-*

---

[1] *See United States v. Jones*, 484 F.3d 783, 787 (5th Cir. 2007) ("The government can prove possession by showing that a defendant exercised either direct physical control over a thing (actual possession) or 'dominion or control' over the thing itself or the area in which it was found (constructive possession).").

[2] *See, e.g.*, *United States v. Huntsberry*, 956 F.3d 270, 279 (5th Cir. 2020); *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012).

[3] For instance, the government said, at oral argument, that it "pretty much st[u]ck with . . . actual possession."

*berry*, 956 F.3d at 279–80, and *Meza*, 701 F.3d at 419, the proposition that "possession requires something more than touching." But neither opinion said that.[4] Neither involved a defendant's touching contraband.[5] Neither is even about *actual* possession.[6] Those were *constructive*-possession cases. *See Huntsberry*, 956 F.3d at 279; *Meza*, 701 F.3d at 419.

Next, the majority cites *United States v. De Leon*, 170 F.3d 494, 498 (5th Cir. 1999), another case about *constructive*—not *actual*—possession.[7] According to the majority, *De Leon* shows that "merely touching an item is not enough to possess it." But *De Leon*, 170 F.3d at 497, actually said that a "thumbprint on [a] box of ammunition would . . . lead a jury to reasonably infer that De Leon . . . possessed control over [the box]."

The majority distills a contradictory point from *De Leon* only by obfuscating the object being touched. According to the majority, under *De Leon*, "'simply touching' is insufficient to establish possession." "Touching what?" the reader might ask. The majority's gloss over the object omits a crucial detail: De Leon's thumbprint was on a box of ammunition. *De Leon*,

---

[4] *See generally Huntsberry*, 956 F.3d 270; *Meza*, 701 F.3d 411.

[5] In *Huntsberry*, 956 F.3d at 280, the guns "were discovered in what appeared to be the master bedroom closet in the trailer Huntsberry occupied for many years." Moreover, there was evidence that the guns "had been left near Huntsberry's residence four years earlier at a New Year's Eve party Huntsberry attended." *Id.* Similarly, in *Meza*, 701 F.3d at 419, there was no allegation that the defendant touched the gun; instead, "the shotgun and ammunition were found on his property."

[6] In *Huntsberry*, 956 F.3d at 279, there's a solitary reference to *actual* possession in describing the framework, before moving on to analyze *constructive* possession in depth. In *Meza*, 701 F.3d at 419, "[t]he government proceeded against Meza on a constructive (not actual) possession theory."

[7] In fact, we eliminated, right off the bat, the notion that that case was about actual possession. *De Leon*, 170 F.3d at 497 ("We hold that a reasonable jury could not find that De Leon actually possessed the ammunition, but could infer that he constructively possessed the ammunition.").

170 F.3d at 497. He thus asked for a jury instruction that a mere touch of the *box* didn't establish constructive possession of the *contents*.[8] We upheld the district court's rejection of that instruction, concluding that it was "unnecessary because the instructions already required proof that De Leon exercised 'dominion and control' over the box of ammunition," which sufficed to keep the jury from finding constructive possession of the ammunition based on a mere touch of the box.[9] In short, *De Leon* was about whether a touch of a container establishes constructive possession of the items in that container; it had nothing to say about whether a touch of contraband establishes actual possession of that contraband.

Thus, in deciding a case about *actual* possession where the defendant touched contraband, the majority hangs it hat on cases about *constructive* possession where the defendant didn't touch contraband.[10] In reality, two

---

[8] Specifically, De Leon requested the following instruction:

> If you find that Mr. De Leon merely touched the *box*, but did not have constructive possession, that is that he did not knowingly have the power or intention to exercise dominion or control over the *cartridges*, I instruct you that you must return a verdict of "Not Guilty" as to count two of the indictment.

*De Leon*, 170 F.3d at 498 (emphases added).

[9] *Id.* We did state that the jury couldn't convict "if they found that the defendant had simply touched the *ammunition* on one occasion." *Id.* (emphasis added). Our reference to a touch of the *ammunition* appears to be inaccurate, because the defense had asked for an instruction about the defendant's touch of the *box*. There's no indication that De Leon actually touched the ammunition. Thus, to the extent that phrase wasn't a clerical mistake, it was *dictum*, because that factual situation—a defendant's touching ammunition—wasn't before us. *See United States v. Lam*, 803 F. App'x 796, 797 (5th Cir.) (per curiam) (concluding that "a ruling on an issue not raised" constitutes *dictum* (cleaned up)), *cert. denied*, 141 S. Ct. 425 (2020); *accord United States v. Castillo*, 179 F.3d 321, 327 (5th Cir. 1999), *rev'd on other grounds*, 530 U.S. 120 (2000).

[10] The majority's out-of-circuit citations don't fare much better. For instance, the majority acknowledges that *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (per curiam), and *United States v. Williams*, 29 F. App'x 486, 488–89 (9th Cir. 2002) (per

No. 20-50304

lines of precedent control this case.

First, courts continually reject the notion that "the brevity of . . . possession render[s] it short of what is required." *United States v. Ortiz*, 927 F.3d 868, 874 (5th Cir. 2019). "Neither the language of the felon-in-possession statute, nor its evident purpose, encourage [*sic*] the court to develop defenses that leave much room for benign transitory possession."[11] In fact, Congress drafted § 922 to "enlarge[] and extend[]" a previous act that was already "designed to prevent [certain criminals] from being able to purchase or in any way come in contact with firearms." *Barrett v. United States*, 423 U.S. 212, 220 (1976) (cleaned up). Thus, the brevity of physical contact doesn't negate possession.

Second, "the government successfully proved actual possession" where "the defendant's . . . fingerprints were found on the firearm."[12] Although the majority gleans from that statement the rule that the defendant must be "tied to the firearm with forensic evidence," that's wrong. Forensic evidence harbors no talismanic significance. Fingerprints would prove only that *the defendant touched the gun*.[13] Thus, the majority fails to explain why a

---

curiam), are both about constructive possession.

[11] *United States v. Teemer*, 394 F.3d 59, 64 (1st Cir. 2005) (cleaned up). Contrary to the majority's suggestion, *Teemer*, *id.*, does not support the majority's rule. In fact, *Teemer* had no occasion to rule on that issue, because the jury "instruction did *not* say that merely to touch the AK–47 constituted a crime." *Id.* at 65 (emphasis added).

[12] *United States v. Hagman*, 740 F.3d 1044, 1049 (5th Cir. 2014); *see also United States v. Tyler*, 474 F.2d 1079, 1081 (5th Cir. 1973) (per curiam) (concluding, in the context of a different statute, that "[t]he jury was free to . . . draw an inference of actual possession from the presence of Tyler's fingerprint on the check"); *De Leon*, 170 F.3d at 497 ("The thumbprint on the box of ammunition would also lead a jury to reasonably infer that De Leon . . . possessed control over [the box].").

[13] *See De Leon*, 170 F.3d at 495, 498 (suggesting that a "partial fingerprint" could show that a defendant "merely touched the box").

fingerprint—which proves that a defendant touched a gun—can establish possession, but a defendant's admission of the same fact will not.[14]

### B.

After it finishes tilting at precedential windmills, the majority begins cherry-picking dictionary definitions. Specifically, it selects a 1934 dictionary. The rationale for that selection is mysterious.[15] In any event, the majority's main definition suffers from the same malady as the majority's precedent: It defines *constructive*—not *actual*—possession.

For instance, the majority tells us that "possess" means "to have and hold [contraband] as property." (Cleaned up). And Webster synonymizes its "to have and hold" language with the word "own."[16] But *constructive*—

---

[14] The majority suggests that we haven't "resolve[d] whether fingerprints are sufficient *on their own* to sustain a possession conviction." That ignores our precedents saying that a fingerprint is sufficient to establish actual possession. *See* cases cited *supra* note 12.

[15] After all, to the extent that the majority seeks to divine the original public meaning of 18 U.S.C. § 922(g), that statute wasn't law until 1968 and didn't criminalize possession until 1986. *See* Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, 1220 (adding § 922(g)); Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449, 452 (1986) (amending § 922(g) to criminalize possession).

Thus, if the majority seeks to divine a relevant interpretive community to ascertain the original public meaning of "possess," at a minimum, it'd need to look to a definition from around 1986. *See* Frank H. Easterbrook, *Abstraction and Authority*, 59 U. Chi. L. Rev. 349, 359–60 (1992) (noting that "the meaning of a text lies in its interpretation by an interpretive community"); *id.* at 364 (noting that "the traditional view . . . looks to the interpretive community at the time of enactment"). And picking the right dictionary definition is important, because "an uncritical approach to dictionaries can mislead judges." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 415 (2012).

[16] *Possess*, Webster's New International Dictionary 1770 (3d ed. 1961); *see also Possess*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/possess (last visited Apr. 22, 2021) (providing one definition of "possess" as "to have and hold as property : OWN").

not *actual*—possession connotes ownership.[17]    Similarly, the majority's "master of" definition mirrors constructive possession's modern definition, namely "dominion . . . over the item."[18]    In short, the majority becomes ensnared in a common pitfall of misguided dictionary usage: It fails to recognize that "common words typically have more than one meaning." SCALIA & GARNER, *supra*, at 418.

In reality, dictionary definitions show that a mere touch constitutes actual possession.  Actual possession refers to "[p]hysical occupancy or control over property."[19]  A better dictionary definition, therefore, is to "seize or gain control of."[20]  And if "seize" is the relevant concept, "a mere touch can be enough for a seizure." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021).

In sum, by relying on inapposite precedent and definitions about *constructive* possession, the majority effectively layers the requirements of *constructive* possession over the requirements of *actual* possession.  Now the government must show not only that a felon touched a firearm, but that he did so with sufficient vigor to render him "'master' over" it.

## C.

The majority's result is well-intentioned.  Situations might arise in

---

[17] *See Meza*, 701 F.3d at 419 ("'Constructive possession' may be found if the defendant had . . . ownership . . . over the item . . . .").

[18] *Meza*, 701 F.3d at 419; *see also Possession*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "construction possession" as "dominion over a property").

[19] *Possession*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Jones*, 484 F.3d at 787 (defining "actual possession" as "direct physical control over a thing").

[20] *Possess*, WEBSTER'S NEW INTERNATIONAL DICTIONARY 1770 (3d ed. 1961); *see also Possess*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/possess (last visited April 22, 2021) (defining "possess" as "to seize and take control of").

No. 20-50304

which a felon's physical contact with a gun is so minimal and otherwise justified that it'd be absurd to convict him of possession. But we already make exceptions to § 922(g) for such situations. And we didn't have to stretch our definition of "actual possession" to get there. In general, a felon is not guilty of possessing a firearm if that possession is (1) brief and (2) justified.[21]

But that doesn't help Smith, because those exceptions "do[] not negate any *element* of the offense."[22] They're affirmative defenses. And, where—as here—a defendant chooses to plead guilty, a district court doesn't "err[] in accepting a guilty plea when the factual basis contains an affirmative defense that does not negate any offense element." *Ortiz*, 927 F.3d at 877.

Thus, the district court did not err by failing to consider Smith's possible affirmative defenses. The majority's holding otherwise engrafts part of an affirmative defense onto the *prima facie* case for possession.

---

[21] *See United States v. Panter*, 688 F.2d 268, 272 (5th Cir. 1982) (holding "that where a convicted felon, reacting out of a reasonable fear for the life or safety of himself, in the actual, physical course of a conflict that he did not provoke, takes temporary possession of a firearm for the purpose or in the course of defending himself, he is not guilty of violating" the predecessor to § 922(g)); *United States v. Penn*, 969 F.3d 450, 456 (5th Cir. 2020) ("A defendant must act promptly to rid himself of the firearm once the circumstances giving rise to the justification subside."), *cert. denied*, No. 20-6791, 2021 WL 1520864 (U.S. Apr. 19, 2021); *United States v. Fisher*, 777 F. App'x 749, 750–51 (5th Cir. 2019) (per curiam) ("The record evidence supports the finding that Fisher's possession of a firearm was not wholly temporary and in the course of defending himself."), *cert. denied*, 140 S. Ct. 978 (2020); *United States v. Lee*, 208 F. App'x 352, 353 (5th Cir. 2006) (per curiam) ("On sufficient facts, the common-law defenses of duress and necessity can justify a violation of a firearms possession statute."); *United States v. Gant*, 691 F.2d 1159, 1161 (5th Cir. 1982) (noting that we have "recognize[d] the general availability of common-law defenses to such a charge").

[22] *Ortiz*, 927 F.3d at 877 ("Even if the factual basis here revealed that Ortiz's possession were justified, it nonetheless established that his conduct satisfied every element of the offense.").

No. 20-50304

## III.

Even supposing that the majority's newfangled interpretation of "possess" were correct, we should nonetheless affirm, because our review is for plain error only. The majority concocts its approach by layering our *constructive*-possession precedent onto an *actual*-possession case. But that's a problem for Smith, because, as the majority acknowledges, our review is for plain error. And plain error review requires Smith to show an error that was "clear and obvious *under existing law.*" [23]

Under existing law, (1) brevity didn't negate actual possession, and (2) a fingerprint sufficed to show actual possession. *See Ortiz*, 927 F.3d at 874; *Hagman*, 740 F.3d at 1049. Under those precedents, it's clear that a mere touch establishes actual possession. Consequently, the district court's failure to anticipate the majority's novel rule—that a felon must handle a firearm with sufficient vigor to render him "'master' over" it—isn't plain error. That rule wasn't clear or obvious under our precedents. The majority contrives it today.

## IV.

The majority tacitly concedes the pandora's box it has opened, by punting on the grounds that we "need not decide every interaction with an item that could qualify as possession." Going forward, however, this court and our district judges will have to answer myriad bizarre questions in light of the majority's opinion: What must a felon do to become the "master of"

---

[23] *Stevens v. United States*, 470 F. App'x 303, 304 (5th Cir. 2012) (per curiam) (emphasis added); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (concluding that a "court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear *under current law*" (emphasis added)); *United States v. Vega*, 332 F.3d 849, 852 n.3 (5th Cir. 2003) ("We conclude that any error by the district court in this regard was not plain or obvious, as we have not previously addressed this issue.").

a firearm? Must he grip it?[24] Brandish it?[25] Hold it for an extended period?[26] Our precedent forecloses each option.

Because the majority reaches that odd result, on plain-error review, only by reliance on inapposite authorities and definitions, I respectfully dissent.

---

[24] That can't be right, because we've said that a defendant's having a firearm "on his person" would show actual possession. *Hagman*, 740 F.3d at 1049.

[25] That can't be right, because the fact that a "defendant's DNA or fingerprints were found on the firearm" would show actual possession. *Hagman*, 740 F.3d at 1049. And that evidence wouldn't necessarily show that a defendant brandished a gun.

[26] That can't be right, because we've rejected arguments that "brief dominion over" contraband is insufficient to show actual possession. *United States v. Toro*, 840 F.2d 1221, 1237–38 (5th Cir. 1988); *see also Ortiz*, 927 F.3d at 874 ("Ortiz hints that the brevity of his possession rendered it short of what is required under the first element. The caselaw is against him."); *United States v. Parker*, 566 F.2d 1304, 1306 (5th Cir. 1978) ("That possession is momentary is immaterial."). Likewise, other circuits reject "any minimum temporal prerequisite for showing direct physical control of a gun." *United States v. Pratt*, 704 F. App'x 420, 425 (6th Cir. 2017); *see also United States v. Matthews*, 520 F.3d 806, 811 (7th Cir. 2008) ("[M]erely holding a firearm for a brief period of time is sufficient to constitute possession within the meaning of section 922."); *United States v. Jackson*, 598 F.3d 340, 351 (7th Cir. 2010) ("[T]he legislative history of 18 U.S.C. § 922 indicates that Congress sought to prohibit even a felon's brief possession of a firearm.").