IN THE SUPREME COURT OF THE STATE OF DELAWARE

WILLIAM SAWYER, §
§ No. 186, 2024
    Defendant Below, §
    Appellant, § Court Below—Superior Court
§ of the State of Delaware
    v. §
§ Cr. ID No. 1910003546
STATE OF DELAWARE, §
§
    Appellee. §

Submitted: January 22, 2025
Decided:   March 5, 2025

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS**, Justices.

## ORDER

On this 5th day of March 2025, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    A jury convicted Appellant William Sawyer of one count of possession of a firearm by a person prohibited ("PFBPP").[1] Before the trial, the parties stipulated that all elements of PFBPP were satisfied except for the element of possession.[2] To resolve the disputed element, the Superior Court held a two-day jury trial. After the State completed its case, Sawyer moved for judgment of acquittal. The court denied the motion and allowed the jury to deliberate. The jury

---

[1] App. to Opening Br. at A7 (Indictment); Ex. B to Opening Br. at 1 (Corrected Sentencing Order).

[2] Specifically, the parties stipulated that: Sawyer was a person prohibited, the relevant firearm was a "firearm" under 11 *Del. C.* § 222, and the firearm was operable at the relevant time. App. to Opening Br. at A12 (Pre-Trial Stipulation of Fact).

found Sawyer guilty of PFBPP. On appeal, Sawyer argues that the Superior Court erred in denying his motion for judgment of acquittal. He contends that the evidence presented by the State was insufficient to support a finding of actual or constructive possession. We disagree and affirm.

(2) On October 5, 2019, New Castle County police arrived at Sawyer's wife's house to investigate a potential crime.[3] Sergeant Michelle Burrus was the lead detective on the investigation. Upon arriving at the house, Sergeant Burrus contacted Detective Ronald Phillips, a crime scene investigator,[4] to help with a search of the house.[5] During the search, Detective Phillips found a 9mm Taurus pistol in "the bottom drawer of a[n] [unlocked] metal filing cabinet in the master bedroom of the residence."[6] Detective Phillips collected the firearm from the scene.[7]

(3) The following day, Sergeant Burrus interviewed Sawyer at the New Castle County Police Department.[8] She recorded the interview via video. During the interview, Sergeant Burrus asked Sawyer whether his wife had a firearm, to

---

[3] *Id.* at A56 (Burrus Test.). The State ultimately decided to not pursue the initial crime for which the police were investigating. *Id.* at A24–25.

[4] *Id.* at A83–84 (Phillips Test.).

[5] *Id.* at A57 (Burrus Test.); *id.* at A85–86 (Phillips Test.).

[6] *Id.* at A86–87 (Phillips Test.) ("Bottom drawer in the cabinet was unsecured, so you didn't need any key or anything to open it, just the drawer pulled open.").

[7] *Id.*

[8] *See id.* at A57–59 (Burrus Test.). Sergeant Burrus testified that the interview occurred on October 5, but the timestamp on the interview video is October 6.

which Sawyer responded, "I think so." As questioning continued, Sawyer admitted that he knew his wife owned a gun but said that he did not know where she kept it. Sergeant Burrus then asked Sawyer: "Did you ever touch it or anything?" Sawyer responded: "When [my wife] showed it to me the first time"; "when [my wife] first had me move in[to]" the house about "two weeks" ago.[9]

(4)    After the interview, Sergeant Burrus ordered processing of the firearm.[10] Detective Phillips swabbed five areas of the firearm for potential DNA evidence[11]—the grip, the slide, the trigger and trigger guard/release area, the magazine release, and the barrel.[12] When later explaining these areas of a firearm to the jury at trial, Detective Phillips testified that the grip is "the most common area a weapon is handled."[13] After Detective Phillips processed the firearm, he collected a DNA sample from Sawyer.[14]

(5)    At trial, Lauren Rothwell—a senior forensic DNA analyst for the Delaware Division of Forensic Science—testified that she analyzed the DNA taken from the firearm.[15] Rothwell generated a DNA report of results, comparing

---

[9] During the trial, the State showed the video of the interview to the jury.

[10] *Id.* at A59–60 (Burrus Test.).

[11] *Id.* at A91 (Phillips Test.).

[12] *Id.* at A91–95 (Phillips Test.).

[13] *Id.* at A92 (Phillips Test.).

[14] *Id.* at A99 (Phillips Test.).

[15] *Id.* at A124–25 (Rothwell Test.).

Sawyer's DNA sample with the swabs taken from the firearm.[16]  The report stated that Sawyer's DNA matched DNA swabs from the "trigger/trigger release" and "grip" areas of the firearm.[17]  Regarding these areas of the firearm, the report stated that "[t]he following evidentiary samples each produced a mixed DNA profile consistent with two individuals, at least one of which is male.  The DNA profiles of the major contributors to these mixtures match the known DNA profile of William Sawyer."[18]  The DNA report was admitted as an exhibit at trial, and Rothwell explained her findings throughout her testimony.[19]

(6)     During cross-examination, defense counsel elicited from Rothwell that "secondary" or "indirect" transfer was "possible."[20]  Rothwell testified that it was possible that Sawyer's DNA could end up on the firearm through an indirect transfer, meaning that Sawyer did not directly touch the firearm.[21]  On redirect, Rothwell testified that it was "possible" because "a number of different scenarios are possible" and that she was not privy to how the DNA made its way onto the firearm.[22]

---

[16] *See id.* at A8–11 (DNA Report).

[17] *Id.* at A10 (DNA Report).

[18] *Id.*  For the trigger/trigger release area, the probability of "randomly selecting an unrelated individual with a DNA profile matching that of" Sawyer was:  1 in 479,800,000,000.  *Id.*  For the grip, it was: 1 in greater than 7 trillion.  *Id.*

[19] *Id.* at A125–36 (Rothwell Test.).

[20] *Id.* at A138–39 (Rothwell Test.).

[21] *Id.* at A138–41 (Rothwell Test.).

[22] *Id.* at A142, A144 (Rothwell Test.).

(7)     After the State rested, defense counsel moved for judgment of acquittal. He argued that the DNA evidence could be explained by secondary transfer and that Sawyer's admission to touching the firearm during the interview with Burrus did not establish possession.[23]   The State countered that the DNA evidence and Sawyer's admission supported actual and constructive possession, particularly because the firearm was found in an unlocked filing cabinet in the master bedroom.[24]   The trial judge denied the motion, finding that the DNA evidence and the admission, among the other circumstantial evidence, were sufficient to allow the jury to consider whether Sawyer had possessed the firearm.[25]   The jury subsequently found Sawyer guilty of PFBPP.[26]   Sawyer timely appealed.

(8)     On appeal, Sawyer contends that the trial judge erred in denying his motion for judgment of acquittal because the State's evidence was not sufficient for any rational trier of fact to find beyond a reasonable doubt that he either actually or constructively possessed the firearm.[27]   As to actual possession, Sawyer argues that the evidence established only that he "touched" the firearm and evidence of touching is not sufficient to prove that he "possessed" it.[28]   As to constructive possession,

---

[23] *Id.* at A149.

[24] *Id.* at A150–51.

[25] *Id.* at A152.

[26] *Id.* at A208 (Verdict).

[27] Opening Br. at 2, 7.

[28] *Id.* at 9–12.

5

Sawyer maintains that because the firearm was found in his wife's house—where he had stayed for only two weeks—there was insufficient circumstantial evidence that Sawyer was aware of the firearm's location or that he had the ability and intention to exercise control over it.[29] The State responds that it had presented sufficient evidence for a rational trier of fact to find that Sawyer actually or constructively possessed the firearm.[30]

(9) We review *de novo* the Superior Court's denial of a motion for judgment of acquittal "to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements, beyond a reasonable doubt."[31] "In doing so, 'we do not distinguish between direct and circumstantial evidence.'"[32]

(10) Sawyer's admission to police coupled with his DNA on the grip and trigger/trigger release areas of the firearm were sufficient for a rational trier of fact to find that Sawyer had actual or constructive possession of the firearm beyond a reasonable doubt. Sawyer's authority, cited to support his position to the contrary,

---

[29] *Id.* at 13–14.

[30] Answering Br. at 2, 9–12.

[31] *Hines v. State*, 292 A.3d 91, 96–97 (Del. 2023) (quoting *Howell v. State*, 268 A.3d 754, 775 (Del. 2021)); *see also Pierce v. State*, 270 A.3d 219, 227–28 (Del. 2020) ("[W]e review *de novo* a defendant's sufficiency of the evidence claim by asking whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of the crimes charged.").

[32] *Hines*, 292 A.3d at 97 (quoting *Howell*, 268 A.3d at 775).

is distinguishable. And Sawyer's request that we give weight to the possibility that his DNA ended up on the firearm through secondary transfer would impermissibly require us to draw defense-friendly inferences.

(11) "To prove actual possession, the State must establish that the defendant 'knowingly ha[d] direct physical control over [the item] . . . that amounts to a conscious dominion, control and authority.'"[33] "Constructive possession requires the State to show that the defendant knew the location of the object[], had the ability to exercise dominion and control, and intended to exercise dominion and control over the item."[34] Circumstantial evidence may prove constructive possession, but "mere proximity to, or awareness of [the firearm] is not sufficient."[35]

---

[33] *Carroll v. State*, 158 A.3d 885, 2017 WL 1223564, at *2 (Del. Mar. 27, 2017) (TABLE) (alterations in original) (quoting *Thomas v. State*, 2005 WL 3031636, at *2 (Del. Nov. 10, 2005)); *Ingram v. State*, 108 A.3d 1225, 2015 WL 631581, at *2 n.12 (Del. Feb. 11, 2015) (TABLE) (noting that for a jury to convict on actual possession, the State had to prove beyond a reasonable doubt that the defendant "knowingly had direct physical control over the firearm"); *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009) (stating that actual possession requires "direct physical control" over the item).

[34] *Carroll*, 2017 WL 1223564, at *3 (quoting *Lum v. State*, 101 A.3d 970, 971 (Del. 2014)); *see also Taylor v. State*, 2024 WL 3810967, at *2 (Del. Aug. 14, 2024) (TABLE) ("Constructive possession requires that a defendant know of the weapon's location and have the ability and intention to exercise control over it." (citing *Lecates*, 987 A.2d at 426)).

[35] *Lecates*, 987 A.2d at 426 (citation and quotation marks omitted). Additionally, the State need not prove that Sawyer possessed the firearm at the actual time of arrest. *See Miller v. State*, 884 A.2d 512, 2005 WL 1653713, at *3 (Del. July 12, 2005) (TABLE) ("[U]nder Section 1448(a), the State need only prove that a defendant possessed or controlled a weapon at some point, not necessarily at the time of his arrest. That conclusion is supported by cases in other jurisdictions, holding that proof of physical accessibility at the time of arrest is not required in order to sustain a conviction for possession of weapons or ammunition by a person prohibited."); *see also Lecates*, 987 A.2d at 420–21 (citing *Miller* with approval).

(12) The State's possession evidence included the police interview of Sawyer, during which he admitted to touching the firearm when his wife showed it to him. The State, through Rothwell's report and testimony, further showed that Sawyer's DNA was on the firearm's grip and trigger/trigger release areas.[36] The State also showed that the firearm was found in an unlocked filing cabinet of a bedroom within the house where Sawyer lived.[37]

(13) Sawyer contends that our case law and that of other jurisdictions hold that touching a firearm, alone, is not sufficient to establish possession. Here, in addition to his admission of touching, Sawyer's DNA was found on the grip and trigger/trigger release areas of the firearm. This evidence is sufficient under our law for a rational trier of fact to find Sawyer guilty beyond a reasonable doubt of PFBPP. Further, and contrary to Sawyer's argument, this conclusion does not contradict the law of other jurisdictions.

(14) For example, in *Walker v. State*, this Court affirmed a PFBPP conviction after a bench trial.[38] There, the defendant fled from police through an apartment complex. Police later found a firearm behind a dumpster at the complex. The firearm had a latent fingerprint on it matching the defendant's. This Court

---

[36] App. to Opening Br. at A10 (DNA Report); *id.* at A125–36 (Rothwell Test.).

[37] *Id.* at A86–87 (Phillips Test.).

[38] 154 A.3d 92, 2017 WL 443720 (Del. Jan. 3, 2017) (TABLE). *Walker* is a Rule 26(c) order, but the Court evaluated the claim under the sufficiency of the evidence standard.

affirmed his conviction, finding that "there was sufficient evidence for the judge, sitting as the trier of fact, to conclude beyond a reasonable doubt that the gun found within hours after [the defendant]'s flight from the police, containing his fingerprint, had been recently possessed by [him] and that [he], because of his prior record, was a person prohibited from possessing a gun."[39]

(15)   In *Reyes-Hernandez v. State*, this Court affirmed a PFBPP conviction when police found a firearm and ammunition inside a suitcase in the garage of the house where the defendant lived with his family members.[40]  DNA swabs taken from the firearm's grip matched the defendant's DNA.   This Court affirmed his conviction, holding that "the direct and circumstantial evidence, viewed in the light most favorable to the State, supported the jury's findings that there was proof beyond a reasonable doubt that [the defendant], a person prohibited from possessing a firearm and ammunition, knowingly was in actual or constructive possession of the gun and ammunition seized[.]"[41]

---

[39] *Id.* at *2.

[40] 201 A.3d 554, 2019 WL 102502 (Del. Jan. 3, 2019) (TABLE).  Like *Walker*, *Reyes-Hernandez* is a Rule 26(c) order, and the Court evaluated the claim under the sufficiency of the evidence standard.

[41] *Id.* at *2; *see also Ingram*, 2015 WL 631581, at *2 (affirming PFBPP conviction based on officer testimony that when the defendant was struggling with police in the living room of his sister's apartment, the defendant "made repeated attempts to reach under the couch in an area where the police later discovered a loaded handgun").

(16)   Here, the weight of the evidence—the admission to police and DNA on the grip and trigger/trigger release areas—is similar to that of *Walker* and *Reyes-Hernandez*.   Sawyer's actual possession argument relies primarily on the Fifth Circuit's decision in *United States v. Smith*[42] and other federal cases cited in *Smith* for the proposition that "touching" is not sufficient.   These cases are factually and procedurally distinguishable and have statements of law that cut against Sawyer's position.

(17)   In *Smith*, the defendant pled guilty to a federal analogue of PFBPP after he admitted to touching a firearm while at his friend's house.[43]   In connection with the plea, the defendant signed a "factual basis" document.[44]   In that document, the defendant indicated that the only interaction he had with the firearm was that he "touched" it.[45]   The district court accepted the document as a sufficient basis for the defendant's guilty plea and conviction.[46]   The defendant appealed, arguing that his admission that he "touched" the firearm was not sufficient to establish possession under the relevant statute.[47]   The Fifth Circuit vacated his plea, concluding that the

---

[42] 997 F.3d 215 (5th Cir. 2021).

[43] *Id.* at 218.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at 219.  Because the defendant did not raise the issue during district court proceedings, the Fifth Circuit reviewed his claim for plain error.  *Id.*

10

district court erred in treating the defendant's "admission to touching the [firearm] as a sufficient factual basis for his guilty plea[.]"[48]  In concluding this, the court noted that "it is error to convict on mere touching alone."[49]

(18)  The only evidence in *Smith* was the defendant's admission that he touched the firearm.  Here too, Sawyer admitted to touching the firearm.  But unlike *Smith*, Sawyer's DNA was found on specific areas of the firearm.  This factor was notably absent in *Smith*.[50]  And the Fifth Circuit stated that "[a] defendant has actual possession over a firearm when he has 'direct physical control'—such as when he . . . is tied to the firearm with 'forensic evidence[,]'"[51] and that "the presence of a defendant's fingerprints on contraband can support the conclusion that the defendant possessed the item if the prints suggest some degree of control."[52]  Sawyer's DNA was found on the grip and trigger/trigger release areas of the firearm,[53] and Detective

---

[48] *Id.* at 224.

[49] *Id.*

[50] On appeal, the Government argued that the Fifth Circuit could also consider the "fact" that the defendant's fingerprints were on the firearm, but the court rejected this argument because it found "no actual evidence of any fingerprints whatsoever" on the firearm.  *Id.* at 220–21.

[51] *Id.* at 219 (citing *U.S. v. Hagman*, 740 F.3d 1044, 1049 (5th Cir. 2014)).

[52] *Id.* at 220 n.7 (collecting cases).

[53] App. to Opening Br. at A10 (DNA Report).

11

Phillips testified that the grip is the "most common area a weapon is handled."[54]

*Smith*, and the cases on which it relies,[55] do not aid Sawyer.

(19)    Last, Sawyer invites us to consider his argument that his DNA ended up on the firearm through secondary transfer. Secondary transfer was not proved at trial; instead, Rothwell testified that it was "possible."[56] To accept Sawyer's

---

[54] *Id.* at A92 (Phillips Test.).

[55] The cases cited by the Fifth Circuit in *Smith*, and on which Sawyer now relies, are distinguishable. *See United States v. Teemer*, 394 F.3d 59, 63–65 (1st Cir. 2005) (affirming a district court's denial of a *proposed jury instruction* about transitory possession in a PFBPP case and noting that the instruction given, requiring the defendant to "exercise authority, dominion, or control," gave the "jury latitude to employ its judgment and conclude that moving the weapon did not constitute possession"); *United States v. Beverly*, 750 F.2d 34, 36–37 (6th Cir. 1984) (finding that the Government failed to establish constructive possession of a firearm, despite presenting evidence that the defendant was found near the firearm and his fingerprint was on it, because the place where the firearm was found (a waste basket in a kitchen) was not within the defendant's direct or indirect control and the fingerprint position on the barrel of the firearm revealed that the defendant touched it while the *firearm was laid down*); *United States v. Wilson*, 922 F.2d 1336, 1338–39 (7th Cir. 1991) (noting that "[m]erely touching [a firearm] would not be possessing it," but *affirming* a jury verdict of PFBPP where police found a firearm under the defendant's girlfriend's mattress in the girlfriend's apartment and a fingerprint expert found a latent "ridge detail" on the "groove" of the firearm matching the defendant's thumb); *United States v. Williams*, 29 F. App'x 486, 488–89 (9th Cir. 2002) (finding, under a *de novo* review of *jury instructions*, that the district court erred in its possession instruction because it did not cover the defense theory that the defendant momentarily handled his fiancé's ammunition when the defendant handed it to the fiancé, and noting that "[c]ase law supports the theory that briefly sampling or handling contraband does not constitute constructive possession").

*Teemer* does not support Sawyer's position—the First Circuit affirmed the denial of a proposed transitory possession instruction and stated: "Assuming that [the defendant] moved the gun to sit down and did nothing else . . ., we think that the jury was still entitled—but not required—to conclude that he had broken the law." *Teemer*, 394 F.3d at 65. *Beverly* is distinguishable on the "control" aspect of possession because the evidence there established that the defendant touched the barrel of the firearm while it was laid down. Here, Sawyer's DNA was found on the grip and trigger/trigger release areas, from which the jury could infer control. *Wilson* does not support Sawyer's position—the Seventh Circuit affirmed the defendant's conviction. And *Williams* is distinguishable because the Ninth Circuit was conducting a *de novo* review of jury instructions, not a sufficiency of the evidence claim.

[56] App. to Opening Br. at A138–39 (Rothwell Test.).

invitation would entail drawing defense-friendly inferences and contradict the requirement that, at this stage, we view the evidence in the light most favorable to the State.[57] In viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Sawyer had actual or constructive possession of the firearm and, therefore, guilty of PFBPP.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[57] *See Taylor*, 2024 WL 3810967, at *2 ("[W]e [are not] called to 'rule out every hypothesis except that of guilty beyond a reasonable doubt.'" (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979))).